ARTHUR H. LAMBORN et al., Copartners under the Firm Name of LAMBORN & COMPANY, Respondents, *v.* THE NATIONAL PARK BANK OF NEW YORK, Appellant.

**Banks and banking — irrevocable letter of credit — construction of contract, made by letters, for sale of goods to be paid by irrevocable letter of credit — when bank which issued letter not justified in refusing to pay — inconsistent and untenable defenses.**

1. In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion and apparent object of the parties, to determine the meaning and intent of the language employed.

2. Plaintiffs, by a contract of sale in writing dated April 24, 1920, agreed to sell to a customer in Chicago a specified quantity and kind of sugar, shipment to be made during August-September, 1920, at option of sellers, from Java by steamer to Philadelphia; payment to be made by net cash on presentation of sight draft with invoice and bill of lading attached, in New York; buyers to open confirmed irrevocable letter of credit in favor of plaintiff in designated bank n New York city. On May 5, 1920, the defendant notified plaintiffs by letter that by instructions from a correspondent acting for the purchaser, it had opened a confirmed credit No. 13840 in plaintiffs' favor payable against sight drafts, with invoices and bills of lading attached, covering the sugar sold by plaintiffs. On June 11, 1920, defendant notified plaintiffs that the shipping period according to instructions received from the purchaser was August and September from Java. The sugar arrived in December, 1920, and as agreed, was placed on board cars at Philadelphia for transportation to Chicago. A draft for the purchase price was thereupon drawn on and presented to defendant together with all the required documents. Payment was re used; the only reason therefor given was that the letter of credit had expired. This action is brought to recover on the letter of credit the amount of the draft. The plaintiffs are entitled to recover; the defenses interposed by defendant are inconsistent, *First,* the defendant denies that there was any letter of credit; *secondly,* it claims that if there were a letter of credit it expired on October 1, 1920.

3. The contention of the defendant that there was no letter of credit

should be dismissed. By all of its correspondence regarding this transaction the defendant admitted that there was a letter of credit, No. 13840, its sole claim being, until the matter came to court, that the draft was not presented in time. The fact that its letter, notifying plaintiff that the credit had been opened, contained no promise to pay is immaterial. Letters of credit do not usually contain a direct promise to pay. Such a promise is implied or inferred from the statement that credit has been established and is irrevocable. A confirmed irrevocable letter of credit, an irrevocable letter, or a confirmed credit is a contract to pay upon compliance with its terms and needs no formal acknowledgment or acceptance other than is therein stated.

4. In considering the second ground of defense that the letter of credit had expired on October 1, 1920, an examination of all the letters passing between the parties after May, 1920, shows that only certain letters contain any statement regarding the expiration date of the letter of credit, always designated as credit No. 13840. In plaintiffs' letter acknowledging receipt of the letter of defendant notifying them of the letter of credit, plaintiffs requested that the expiration date of the letter of credit be made December 31, 1920, that is, in other words, instead of leaving the draft to be presented within a reasonable time, plaintiffs asked that a definite time be stated. Defendant replied to this request that it had not authority to extend the validity of the credit, No. 13840, from October first to December thirty-first but did not say that its instructions were to limit the time of payment to October first, nor did the contract of sale between plaintiffs and the purchasers contain such limitation or any limitation at all; the sight drafts were to be presented within a reasonable time and the letter of credit contained no limitation. Furthermore, defendant's claim is unreasonable and would nullify the letter of credit. It is stipulated in evidence that goods shipped from Java could not, at the earliest date under the contract, reach this country until after the date when, as defendant claims, the letter of credit expired, nor could the shipping documents be presented to defendant on October first. The letters must receive a reasonable construction and defendant be held to the fair import thereof.

*Lamborn* v. *National Park Bank*, 212 App. Div. 25, affirmed.

(Argued June 12, 1925; decided July 15, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 27, 1925, affirming a judgment in favor

of plaintiffs entered upon a decision of the court at a Trial Term without a jury.

*Emmet F. Smith* and *Louis F. Doyle* for appellant. The defendant's letter of May 5, 1920, was not a letter of credit. (*Johannessen* v. *Munroe*, 84 Hun, 594; *American Steel Co.* v. *Irving Bank*, 266 Fed. Rep. 41; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482; *International Banking Corp.* v. *Irving Bank*, 283 Fed. Rep. 105; 1 Williston on Contracts, 1; *Varney* v. *Ditmar*, 217 N. Y. 228; *Evans* v. *Supreme Council*, 223 N. Y. 507; *Nat. City Bank* v. *Seattle Nat. Bank*, 121 Wash. 482; *United Press* v. *New York Press*, 164 N. Y. 406; *Humphreys* v. *New York*, 121 N. Y. 435; *Sun* v. *Remington*, 235 N. Y. 338.) Even if defendant's letter of May 5, 1920, were to be construed as a letter of credit, plaintiffs rejected it by their letter of June 10, 1920. (*International Banking Corp.* v. *Irving Nat. Bank*, 283 Fed. Rep. 103; *Poel* v. *Brunswick*, 216 N. Y. 319; *Moss* v. *O. C. Trust Co.*, 246 Mass. 139.) If any credit was issued by the defendant in favor of the plaintiffs, that credit was created as a result of the first three letters which passed between the parties, namely, defendant's letter of May 5, 1920, plaintiffs' letter of June 10, 1920, and defendant's letter of June 11, 1920, and was, therefore, a credit expiring October 1, 1920, in accordance with the limitation contained in defendant's letter of June eleventh. (*Schenectady* v. *Holbrook*, 101 N. Y. 45; *Wittwer* v. *Hurwitz*, 216 N. Y. 264; *Poel* v. *Brunswick*, 216 N. Y. 319; *Boer* v. *Garcia*, 240 N. Y. 9; *Laudisi* v. *Amer. Exch. Nat. Bank*, 239 N. Y. 234; *Lamborn* v. *Lake Shore Banking & Trust Co.*, 231 N. Y. 616.)

*Louis O. Van Doren, Alfred B. Mc Nevin* and *Edward S. Bentley* for respondents. In accordance with the requirements of the buyer's and sellers' contract the National Park Bank on May 5, 1920, for a consideration, issued and delivered to Lamborn & Co. an irrevocable letter of

credit.   Thereafter this letter of credit was not subject
to  modification  without  Lamborn  &  Co.'s  consent.
(*Doelger* v. *B. P. Nat. Bank*, 201 App. Div. 515;
*Johannessen* v. *Munroe*, 158 N. Y. 641.)   The letter must
be given a reasonable construction.   Honesty of motive
must be attributed to the bank and if perchance there
is ambiguity in the letter, since the bank wrote it, it must
be construed strictly against the bank and not in a
manner of putting the rights of Lamborn & Co., the
recipients of the bank's letter of credit, to cover a shipment
from Java in August and/or September, in jeopardy of
a construction which would make the letter of credit
expire within twenty-four hours after September thirtieth.
(*Doelger* v. *B. P. Nat. Bank*, 201 App. Div. 515; *Gillet*
v. *Bank of America*, 160 N. Y. 549; *Schneider* v. *Vietor*,
208 App. Div. 624; *Aldrich* v. *N. Y. Life Ins. Co.*, 235
N. Y. 214; *Border  Nat. Bank* v. *American  Nat. Bank*,
282 Fed. Rep. 73.)

CRANE, J.   On the 24th day of April, 1920, Lamborn &
Company, a copartnership with principal offices in the
city and State of New York, sold to Brodsky Gross &
Company, of Chicago, Illinois, 1,650 bags of Java white
sugars.   The contract of sale was in writing, and provided
as follows:
" SHIPMENT.   Shipment to be made during August-
September, 1920, at option of the sellers from Java by
steamer or steamers to Philadelphia, Pa.   Names of such
steamer  or  steamers  to  be  declared  later.  *  *  *
" PAYMENT.   Payment to  be  made  by  net  cash  on
presentation of sight draft, with invoice and bill of
lading attached in New York.   Buyers to open within
five (5) days confirmed irrevocable letter of credit in
favor of Lamborn & Company, New York City for the
full invoice value of 1650 bags with Bankers Trust
Company, New York City and Bankers to confirm same
to Lamborn & Company, New York City."

The " confirmed irrevocable letter of credit " was not opened with the Bankers Trust Company, but with the defendant, the National Park Bank.   It read as follows:

" THE NATIONAL PARK BANK
" OF NEW YORK.

" *May* 5, 1920.

" MESSRS. LAMBORN & COMPANY
    " 132 Front Street
        " City:
    " Re: Our credit # 13840

" GENTLEMEN.— We beg to advise you that we have received instructions from Greenebaum Sons Bank & Trust Co., Chicago, to open a confirmed credit in your favor with the Bankers Trust Co., for $79,685.76, payable against delivery of sight drafts with invoices and bills of lading attached covering 1650 bags about 224 lbs. each Java White Sugar at 22c per pound less 2% duty paid f. o. b. cars Philadelphia landed weights, shipments to be made during August and September 1920.

" We advised the Bankers Trust Co. of this credit our #13840, but they have returned our advices, stating that credit should have been opened directly with you and not through them.

" Kindly advise us in this connection.
        " Very truly yours,
            " (Signed) H. L. SPARKS,
                " *Assistant Cashier.*"


On June 11th the National Park Bank notified Lamborn & Company that the shipping period according to the instructions received from Brodsky Gross & Company was August and September *from Java.*

Here we have a full and complete letter of credit confirmed and irrevocable issued by the defendant to the plaintiffs in accordance with instructions from Brodsky Gross & Company or their Chicago agents carrying out the terms of the contract of sale.

The sugar arrived in December of 1920 and was placed on board cars at Philadelphia. A draft for $79,623.24 was drawn on the defendant and presented at its New York banking house with all the required documents. Payment was refused. The reason given was that the letter of credit had expired. There was no claim made that a letter of credit had not been issued. It is conceded and always has been that the plaintiffs complied fully with all shipping instructions and that they presented all the documents required by the letter of credit.

This action is brought to recover on the letter of credit the amount of the draft. The defenses are inconsistent. *First*, the defendant denies that there was any letter of credit; *secondly*, it claims that if there were a letter of credit, it expired on October 1, 1920.

The case was fully tried out before the court without a jury and judgment delivered for the plaintiffs which has been affirmed by the Appellate Division, one of the justices dissenting.

We may dismiss the first contention of the defendant that there was no letter of credit by the brief statement that all of its correspondence regarding this transaction admitted that there was a letter of credit, its sole claim being until the matter came to court that the draft was not presented in time. It is said that the letter of May fifth contained no promise to pay. Letters of credit do not usually contain a direct promise to pay. Such a promise is implied or inferred from the statement that credit has been established and is irrevocable. A confirmed irrevocable letter of credit, an irrevocable letter, or a confirmed credit is a contract to pay upon compliance with its terms and needs no formal acknowledgment or acceptance other than is therein stated. Banks may — they usually do — communicate to the drawer the instructions received from the correspondent establishing the credit. (*Gelpcke* v. *Quentell*, 74 N. Y. 599; *Krakauer*

v. *Chapman,* 16 App. Div. 115; affd., 162 N. Y. 623; *Doelger* v. *Battery Park National Bank,* 201 App. Div. 515; *Border Nat. Bank* v. *American Nat. Bank,* 282 Fed. Rep. 73.)

*Moss* v. *Old Colony Trust Co.* (246 Mass. 139) contains no statement or ruling to the contrary, as intimated by the courts below. The letter of credit in that case had been rejected. Chief Justice RUGG is particular to point out that no particular form is prescribed for a letter of credit. " Their nature and use," says he, " ought to be kept as free as possible from narrowing statements of limitations and from judicial dicta not necessary to a particular decision."

As to the second ground of defense, that the letter of credit had expired on October 1st, we must consider other letters passing between the parties after May the fifth. In considering these letters we must carry in mind the terms and conditions of this alleged letter of credit of May 5th as amended or modified by the letter of June 11th. It advised Lamborn & Company that the defendant had received instructions to open a confirmed credit for $79,685.76, payable against sight drafts and shipping documents, showing that the sugars were placed f. o. b. cars Philadelphia, shipments to be made during August and September, 1920, from Java. The credit was to be opened with the Bankers Trust Company, but that bank had instructed the National Park Bank to open it directly with Lamborn & Company. The letter closed by asking, " Kindly advise us in this connection." I have said that this constituted a complete letter of credit. No time was mentioned within which the sight drafts were to be presented. In the absence of a fixed time the law will read into the instrument a provision that they were to be presented within a reasonable time. (See above cases.)

On June tenth, the plaintiffs wrote the defendant the following letter:

" LAMBORN & Co.
    " Import & Export
        " Department           132 Front Street
                                    " NEW YORK
                                    " *June* 10, 1920.
" NATIONAL PARK BANK OF NEW YORK,
        " # 214 Broadway,
        " New York City:
    " GENTLEMEN.— We refer to your Letter of Credit
#13840, issued .upon instructions from Greenebaum &
Sons Bank & Trust Company, Chicago, for the account
of Brodsky Gross, Chicago, Ill., for $79,685.76.
    " You state that you advised the Bankers Trust
Company, but that they returned your advices, stating
that Credit should be opened directly with us. This is
correct. We beg to request that you issue this Letter
of Credit for $79,685.76, setting expiration date of
December 31, 1920. We also beg to call your attention
to the fact that shipment should be August and/or Sep-
tember from Java.
    " We regret that this matter has not been called to
your attention at an earlier date, but would appreciate
your cooperation in arranging details, so that they may
be satisfactory to all concerned.
                    ° " Yours very truly,
                            " LAMBORN & COMPANY,
                            " (Signed) G. F. J. AMTHOR,
" McF/AMS .                    Credit Department."

    Certain things are to be noted about this letter. It
refers to the letter of credit No. 13840 as one which has
been issued upon instructions for the account of Brodsky
Gross, Chicago, Illinois. It answers the last and only
inquiry in the letter of May 5th by saying that the
credit opened with Lamborn & Co. directly instead of
with the Bankers Trust Company is correct. It then
contains the request that the letter of credit set the
expiration date as of December 31, 1920. In other

words, instead of leaving the drafts to be presented within a reasonable time, the plaintiffs ask that a definite time be stated. October first is not mentioned or referred to in either the letter of May fifth or that of June tenth.

On the following day the National Park Bank answers:

> " THE NATIONAL PARK BANK
> " OF NEW YORK.
>
> " *June* 11, 1920.
>
> " MESSRS. LAMBORN & COMPANY,
>     " 132 Front Street,
>         " City:
>             " Re: Our Credit #13840.
>
> " GENTLEMEN.— Referring to your favor of June 10th, relative to our confirmed credit #13840, we regret having to advise you that we have no authority to extent validity of this credit from October 1st to Dec. 31st and would suggest your communicating with your customers and having corrected instructions sent to us. This also applies to the shipping period which in the instructions received by us specified August and September from Java.
>
> " Very truly yours,
> " (Signed) H. L. SPARKS
>         " *Assistant Cashier.*"

Notice should be taken that this letter refers to " our confirmed credit #13840," and that the instructions regarding the shipping period " specified August and September from Java." In reply to the request of the plaintiffs the defendant writes that it has no authority to extend validity of this credit from October 1st to December 31st. The defendant does not say that its instructions were to limit the time of payment to October 1st, and it has never in its brief or by the evidence claimed that its instructions were to this effect. The contract between Brodsky Gross & Company and the plaintiffs contained no such limitation — in fact no limitation at all. The letter of credit of May 5th contained no limitation. The sight drafts were to be presented within a reasonab'.

time.  Lamborn & Company asked that a definite time might be fixed and I read this answer of the National Park Bank under June 11th as meaning that the defendant bank had no power or authority to make that definite which had been left indefinite.  The letter of credit had been given the number 13840.  Throughout the correspondence this number is referred to as the letter of credit.  The first mention of it is in the letter of May 5th, wherein it is termed " Our credit #13840."  This is the only letter of credit in evidence in this case having this number.  It contains no reference to October 1st. It reads in the eyes of the law as though it contained the provision payable against " delivery of sight drafts *within a reasonable time.*"  If those words had been actually written into this letter of credit No. 13840 we would not consider that the letter of June 11th modified or struck them out.  The plaintiffs by the letter of June 10th requested that the time limit be made definite. This letter of the defendant of June 11th simply refused the request as not within its instructions.  It did not attempt to modify the letter of May 5th in this particular or to say that anything had been omitted.  The answer was that the letter must stand as it was as the bank could not modify it; the instructions which had been followed could not be departed from.  And thus the matter was left.

The plaintiffs never acquiesced in any modification and did not consider that the date of payment had been limited to October 1st.  How could any reasonable business man dealing in sugars to be shipped from Java during August and September accept a letter of credit which would expire the day after the last day of shipment from Java?  The claim of the defendant would nullify the letter altogether.  It is unreasonable.  By a stipulation of the parties it was agreed that in the ordinary course of shipping it takes seventy-five days to bring

34

goods from Java to Philadelphia. Goods shipped the first day of August, the earliest possible date for shipment under the sales contract and the letter of credit, could not possibly reach Philadelphia until fifteen days after the expiration of the letter of credit, if the defendant's contention be correct. The shipping documents and bills of lading showing that the sugar had been placed f. o. b. cars at Philadelphia under no circumstances could possibly be presented to the bank on October 1st. No interpretation should be given to this letter of credit of the defendant or its correspondence which would make the whole thing meaningless and an absurdity. The defendant intended to give the plaintiffs something of value. Its letter of May 5th followed by that of June 11th cannot be considered as mere empty formalities. The bank should be held to the fair import of its engagement. These letters must receive a reasonable construction, having regard to the intent of the parties and the circumstances. (*Krakauer* v. *Chapman, supra.*)

" In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding circumstances, the occasion and apparent object of the parties, to determine the meaning and intent of the language employed." (*Gillet* v. *Bank of America,* 160 N. Y. 549, 555.)

Beyond doubt, the defendant considered that it was bound to do something; that it was held to the plaintiffs by some valid and enforcible obligation. After the drop in the price of sugar it wrote on August 25th as follows:

" THE NATIONAL PARK BANK
" OF NEW YORK.

" MESSRS. LAMBORN & COMPANY, " *August* 25, 1920.

" 132 Front Street,
" City:

" DEAR SIRS.— Referring to our credits numbered 13840 and 14031 opened in your favor by the Greenebaum

Sons Bank & Trust Company of Chicago, Illinois, we beg to advise you that our correspondents have to-day telegraphed us directing that payments be suspended until further notice.

" Please advise us if this arrangement has your consent.

" Yours very truly,

"(Signed) H. L. SPARKS,

" *Assistant Cashier.*"

And again on August 27th:

" THE NATIONAL PARK BANK

" OF NEW YORK.

" *August* 27, 1920.

" MESSRS. LAMBORN & COMPANY,

" 132 Front Street,

" City:

" DEAR SIRS.— Referring to our letter of August 25th in which we. advised you that the Greenebaum Sons Bank & Trust Company of Chicago had directed us to suspend payments under our credits numbered 13840 and 14031 until further notice, we would point out to you that apparently we have not received your consent to this arrangement.

" We are to-day in receipt of a letter from our correspondents in which they explain that their clients, Messrs. Brodsky, Gross & Company, wish to examine all documents presented before authorizing payment. In other words, they evidently expect that you will surrender the documents to us for forwarding to our Chicago correspondents, and that your customers are to have the privilege of examining these documents before authorizing payment.

" Awaiting an expression of your views on this subject, we remain

" Yours very truly,

"(Signed) H. L. SPARKS,

" *Assistant Cashier.*"

The plaintiffs answered on August 31, 1920:

*" August* 31st, 1920.
" Credit Department.
" NATIONAL PARK BANK,
" 214 Broadway,          .
" New York City:

" GENTLEMEN.— With regard to your confirmed Letter of Credit #13840 which you advised was issued in accordance with instructions received by you from Greenebaum Sons Bank & Trust Company, Chicago, Ill., in our favor, covering a purchase from us by Brodsky Gross & Company, Chicago, Ill., of 1500 bags of Java White Sugar 10% more or less at 22¢ per lb., less 2% duty paid, f. o. b. cars Philadelphia, Pa., landed weights, shipment during August or September, 1920, from Java, which shipping point you confirmed to us under date of June 11th, 1920, as it is our intention to comply fully with all of the terms and conditions of the contract covered by this Letter of Credit barring unforeseen circumstances which form part of the contract, we will under no circumstances agree to either the suspension of payment or the cancellation of this Letter of Credit.

" As this Letter of Credit shows no definite date of expiration, and as the sugar was sold the consignee on the basis of f. o. b. cars Philadelphia, Pa., landed weights, shipment from Java during August or September, 1920, we will look to you for payment of our sight drafts when accompanied by invoices, landed weight certificate and Railroad Bills of Lading blank indorsed.   *   *   * "

We think that the defendant's letter of credit gave the plaintiffs a reasonable time within which to present their sight draft and papers and that the plaintiffs have fully complied with all the terms and conditions entitling them to payment.

If, however, there be any question of fact gathered from all the circumstances and correspondence as to what the letter of credit did mean and as to the intention of the parties; if there be different inferences which might

be drawn from the correspondence, the facts were all before the trial justice who made his findings after hearing the case, and on them based his conclusions of law. He found as a fact that on May 5th, 1920, the defendant for a valuable consideration moving to it issued and delivered to the plaintiffs a confirmed irrevocable letter of credit in words and figures as contained in the letter of May 5th, and that thereupon and thereafter the plaintiffs accepted this said letter of credit and acted upon it by making the shipment of goods therein mentioned; that this letter of credit when issued by the defendant and accepted by the plaintiffs contained no expiration date. There was ample evidence to sustain these findings.

For the reasons here stated the judgment appealed from should be affirmed, with costs.

Hiscock, Ch. J., Cardozo, McLaughlin, Andrews and Lehman, JJ., concur; Pound, J., absent.

Judgment affirmed.