96 F.3d 51
 30 UCC Rep.Serv.2d 913
 Haitham Khaled BOUZO, Plaintiff-Appellant,
v.
CITIBANK, N.A., Defendant-Appellee.
CITIBANK, N.A., Third-Party Plaintiff,
v.
Harry Stiles ANDERSON, Deutsch, Kerrigan & Stiles, a
partnership, David C. Treen, Bernard Marcus, Frederick R.
Bott, William W. Messersmith, Charles K. Reasonover, David
L. Campbell, Charles F. Seeman, Jr., Robert E. Kerrigan,
Jr., Bernard M. Cass, Harry S. Anderson, Raymon G. Jones,
Francis J. Barry, Jr., Victor E. Stillwell, Patrick J.
Berrigan, Allen F. Campbell, Matt J. Farley, Philip D.
Lorio, III, G. Alex Weller, A. Wendel Stout, Daniel A.
Smith, Ethel H. Cohen, Terrence L. Brennan, Marc J. Yellin,
Howard L. Murphy, Darrell K. Cherry, Richard B. Montgomery,
William E. Wright, Paul S. Hughes, Nancy J. Marshall, James
G. Wyly, D. Rex English, Ellis B. Murov, Michael P. Farrell,
Joseph L. McReynolds, Joseph L. Spilman, Duris L. Holmes,
Janet L. MacDonnell, William Lee Kohler, Leonard Flocco,
Delta Oil Company, and Aamir Raza Khan, Third-Party Defendants.
 No. 493, Docket 95-7461.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 15, 1995.
Decided Sept. 18, 1996.
 
 T. Barry Kingham, New York City (Siobhan A. Handley, Curtis, Mallet-Prevost, Colt & Mosle, of counsel), for Plaintiff-Appellant.
 Michael T. Sullivan, New York City (Michael L. Slonim, William A. Walsh, Zeichner, Ellman & Krause, of counsel), for Defendant-Appellee.
 Before: LUMBARD, MAHONEY, and LEVAL, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Plaintiff-appellant Haitham Khaled Bouzo appeals from a judgment entered April 6, 1995 in the United States District Court for the Southern District of New York, Nina Gershon, Magistrate Judge,[1] that granted the motion of defendant-appellee Citibank, N.A. ("Citibank") for summary judgment and dismissed Bouzo's amended complaint after concluding that a document issued to Bouzo by Citibank was not a letter of credit under Article 5 of the New York Uniform Commercial Code (the "N.Y.U.C.C."). Because there are genuine issues of fact concerning whether the document qualifies as a letter of credit under the N.Y.U.C.C., we vacate the judgment of the district court and remand for further proceedings.
 
 Background
 
 2
 On March 15, 1986, Bouzo, a citizen of the Kingdom of Saudi Arabia, entered into an agreement (the "Consultancy Agreement") with Delta Oil Company, Inc. ("Delta"), a Delaware corporation, whereby Bouzo agreed to assist Delta in obtaining a contract for the purchase of oil from the Ministry of Petroleum and Mineral Resources of the Kingdom of Saudi Arabia ("Petromin"). Pursuant to the Consultancy Agreement, Bouzo was to assist Delta in "negotiating, concluding and signing contract(s) of sale ... for the purchase [of] up to 50,000 barrels per day of Saudi Arabian Light Crude Oil for a 3 year contract on a Nett Back Basis." As subsequently amended, the Consultancy Agreement provided for Bouzo's compensation as follows:
 
 
 3
 1. Payment of the fees shall be made concurrently with the payment of [Petromin] in accordance with the terms and conditions of the pertinent contract of sale, provided that [Delta] shall prior to the time of the signing of the contract of sale with [Petromin], deliver to [Bouzo] an unconditional, unlimited, and irrevocable guarantee in the amount of fees equal to [twenty cents] per barrel due to [Bouzo] by virtue of such contract of sale.
 
 
 4
 ....
 
 
 5
 2. [Bouzo] shall have the full and sole right to call up such bank guarantee at any time if payment to [Petromin] is made without concurrently paying the fees or if payment to [Petromin] is, for any reason, delayed--wholely [sic] or partially--from the date already fixed in accordance with the pertinent contract of sale signed with [Petromin].
 
 
 6
 On March 17, 1986, Bouzo sent a telex to Delta requesting that two letters in furtherance of the Consultancy Agreement be issued to Bouzo by Delta's bank, Citibank. Bouzo described the requested letters as, respectively, a "bank guarantee letter to be issued by the bank in my favor" and a "bank pay order issued to me by the bank," and provided Delta with the text of the letters. In accordance with his request, Bouzo received two letters, dated April 14, 1986 (the "April 14 Letter") and May 21, 1986 (the "May 21 Letter"), bearing the signature of Leonard Flocco, an Assistant Vice President of Citibank.[2] The April 14 Letter substantially conformed to the text provided by Bouzo for the "guarantee letter" and provided:
 
 
 7
 We [i.e., Citibank] have been informed by our client, Delta Oil Company, Inc. of New Orleans, Louisiana, U.S.A., that a contract is presently under negotiation between Petromin ... and Delta Oil Company, Inc.
 
 
 8
 In this respect, we are pleased to confirm that we will issue an irrevocable bank guarantee in your name, addressed to Mr. Abdullaah Ba Hamdan, National Commercial Bank, Head Office, Riyadh, Saudi Arabia, to the amount of U.S. 20 cents per barrel of Saudi Arabian light crude oil, at 50,000 barrels per day, for a three year contract cycle. This bank guarantee will be issued immediately in your favor and shall become effective upon the presentation of a copy of the signed contract between Delta Oil Company, Inc. and Petromin, which validity may be confirmed by your bank, The National Commercial Bank.
 
 
 9
 The release of the payment of U.S. 20 cents per barrel will be made to your name simultaneously in the letter of credit issued to Petromin in accordance with the terms and conditions of the contract of sale for B/L quantities negotiated under the said letter of credit inclusive of any amendments, extensions, additions, and rollovers.
 
 
 10
 Furthermore, you have the right to call such bank guarantee in case of our failure to execute the agreed payment as provided for in this letter of undertaking.
 
 
 11
 This letter of undertaking depends upon a validly signed contract between Delta Oil Company, Inc. and Petromin, and remains valid until August 31, 1986, after which it will automatically become null and void if no contract is concluded between Petromin and Delta Oil Company, Inc.
 
 
 12
 The May 21 Letter substantially conformed to the text provided by Bouzo for the "bank pay order," and stated:
 
 
 13
 We [i.e., Citibank] have been informed by our client, Delta/Falcon Partnership of New Orleans, Louisiana, USA, that a contract is presently under negotiation between Delta Oil Company, Inc., and Petromin.... In this respect, we are pleased to confirm that we will issue an unconditional, irrevocable bank pay order in the amount of two million U.S. dollars ... in your name, addressed to Mr. Abdullah Ba Hamdan, National Commercial Bank, Riyadh, Saudi Arabia, within twenty (20) days after presentation to us by Delta Oil Company, Inc. of a duplicate original of the signed contract between Petromin and Delta Oil Company, Inc. [T]his bank pay order may be confirmed by your bank, The National Commercial Bank.
 
 
 14
 Such bank pay order shall immediately be released for payment in full within twenty (20) days after the presentation to us of a duplicate original of the signed contract between Petromin and Delta Oil Company, Inc. in compliance with the above terms and conditions.
 
 
 15
 This letter of undertaking will remain valid until August 31st, 1986, after which it will automatically become null and void if no contract is concluded between Petromin and Delta Oil Company, Inc.
 
 
 16
 Shortly thereafter, on June 1, 1986, Delta and Petromin executed a document entitled "Heads of Agreement" whereby Delta agreed to purchase 50,000 barrels of light crude oil per day from Petromin for a period of one year. Bouzo allegedly presented a copy of the Heads of Agreement to Flocco at Flocco's office on July 23, 1986, at which time Bouzo dictated the following letter (the "July 23 Letter"), which stated no addressee, bore the salutation "Dear Sir," was signed by Bouzo, and bore three countersignatures that are allegedly those of Flocco and two representatives of Delta:
 
 
 17
 In reference to your letter dated May 21, 1986 and our during our [sic] meeting on July 23, 1986, a copy of the signed contract between Delta Oil Company, Inc. and Petromin has been presented to you. The contract has been verified by members of the Delta Oil Company, Inc. and Citibank.
 
 
 18
 In regards to your letter dated May 21, 1986, a bank order has been made out to the sum of $2,000,000 U.S. dollars and credited to Dr. Haitham Khalid Bouzo's account. (# 15951) The bank is located in Luxembourg. The address is as follows: Banque Indosuez, 39 allee Scheffer, B.P. 1104. The telephone is (352) 47.67.1. Telex is 1254 SUEZ LU. If you have any questions, please contact Mr. J.M. Schiltz. This is an irrevocable, unconditional bank order which has been credited to this account.
 
 
 19
 In conclusion, this contract is now valid and therefore cannot be declared null and void as stipulated in your letter.
 
 
 20
 The payment described in the July 23 Letter was never made, however, and Citibank allegedly denied three subsequent requests by Bouzo for payment.
 
 
 21
 Bouzo filed the instant diversity action against Citibank on March 2, 1988, seeking payment of $2,000,000 allegedly due under the May 21 Letter. Citibank answered and filed a third-party complaint against Flocco, Delta, and an officer of Delta, which was subsequently amended to add numerous other third party-defendants. A dispute over discovery ensued, and when Bouzo failed to produce documentary evidence of prior transactions in which he had used the term "bank pay order" (a use that he had asserted in deposition testimony) despite an outstanding court order that he do so, Citibank moved to dismiss the complaint pursuant to Rule 37 of the Federal Rules of Civil Procedure. Magistrate Judge Gershon, to whom the case had been referred for discovery by Judge Vincent L. Broderick, concluded that dismissal was inappropriate, but issued an order precluding Bouzo from offering any evidence of his prior "bank pay order" transactions. Magistrate Judge Gershon stated:
 
 
 22
 The prior transactions were referred to by plaintiff as a way to support the concept that a "bank pay order" was an accepted form of financing and to suggest that, having engaged in similar transactions, his claims about the alleged deal with Citibank were credible. Plaintiff now takes the position that the Delta Oil Company deal was the first transaction in which a "bank pay order" was used. He also now takes the position that the prior transactions have no relevance to this case. As [Bouzo's] counsel states, "The CITIBANK transaction stands on its own...." [Bouzo's] Brief in Opposition, p. 6.
 
 
 23
 Thus, the appropriate sanction to be awarded is that [Bouzo] be precluded from referring to, or offering documentary evidence of, any of the prior transactions with other parties which are the subject of this motion. Having willfully failed to produce that evidence to Citibank in discovery, ... plaintiff will not be permitted to offer evidence about the transactions at trial. This sanction will fully protect Citibank from any prejudice that might arise if plaintiff, at trial, were to attempt to use evidence about prior transactions to support his claim.
 
 
 24
 Bouzo v. Citibank, No. 88 Civ. 1446 (VLB), slip op. at 3-4 (S.D.N.Y. Mar. 31, 1993) ("Bouzo I "). Citibank filed objections to this ruling, contending that Bouzo's complaint should have been dismissed, but Judge Broderick denied the objections, noting that the "drastic sanction" of dismissal was inappropriate. Bouzo v. Citibank, No. 88 Civ. 1446 (VLB), 1993 WL 525114, at * 1 (S.D.N.Y. Dec.13, 1993) ("Bouzo II "). Judge Broderick added that Magistrate Judge Gershon's ruling entitled Citibank to an "adverse inference" against Bouzo (resulting from his failure to produce relevant documents that he had claimed in sworn testimony to be in his possession), which would be "relevant at trial ... and also ... at the summary judgment stage." Id.
 
 
 25
 Citibank subsequently moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the case was referred to Magistrate Judge Gershon for trial and resolution of the summary judgment motion pursuant to 28 U.S.C. § 636(c). The district court granted in part Bouzo's pending motion for leave to amend his complaint, and granted Citibank's motion for summary judgment as to the amended complaint. Bouzo v. Citibank, No. 88 Civ. 1446 (VLB), 1995 WL 144825 (S.D.N.Y. Mar. 31, 1995) ("Bouzo III "). The court concluded that Bouzo could not recover under a letter of credit theory because the May 21 Letter failed to qualify as a letter of credit under section 5-103 of the N.Y.U.C.C. The court specified that the May 21 Letter did not state: (1) that it was a " 'letter of credit,' an 'irrevocable credit,' or a 'credit,' " id. at * 6; (2) that credit " 'ha[d] been established and [was] irrevocable,' " id. (quoting Lamborn v. National Park Bank, 240 N.Y. 520, 526, 148 N.E. 664 (1925)); or (3) that Citibank would pay Bouzo "upon the presentation of a specific document," id., but only that a "bank pay order" would issue upon certain conditions, id. The court added that the May 21 Letter did not adequately particularize the subject matter of the contract that was to trigger payment, id., that Bouzo could not establish an issue of fact as to "whether a 'bank pay order' is a letter of credit," id. (especially in view of the preclusion order previously entered, id. at * 7), and that any ambiguity in the May 21 Letter should be resolved adversely to Bouzo because he had drafted it, id. at * 6.
 
 
 26
 This appeal followed.
 
 Discussion
 
 27
 Because this is an appeal from a grant of summary judgment, "we review the record de novo, drawing all factual inferences and resolving all ambiguities in favor of the nonmoving party." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial' " and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
 
 
 28
 A letter of credit (sometimes referred to as a "credit," see e.g., N.Y.U.C.C. § 5-103(1)(a)), "is a common payment mechanism in international trade that permits the buyer in a transaction to substitute the financial integrity of a stable credit source (usually a bank) for his own." Alaska Textile Co. v. Chase Manhattan Bank, 982 F.2d 813, 815 (2d Cir.1992). The letter of credit is one part of a tripartite contractual relationship consisting of
 
 
 29
 first, the underlying contract ... between the customer [of the issuing bank] and the beneficiary [of the letter of credit]; second, the agreement between the issuer ... and its customer ... in which the issuer typically agrees to issue the letter of credit in return for its customer's promise to reimburse it for any payments made under the credit plus a commission; and third, the letter of credit itself[,] which is an engagement by the bank or other issuer that it will honor drafts or other demands for payment presented by the beneficiary or a transferee beneficiary upon compliance with the terms and conditions specified in the credit.
 
 
 30
 First Commercial Bank v. Gotham Originals, Inc., 64 N.Y.2d 287, 294, 486 N.Y.S.2d 715, 718, 475 N.E.2d 1255 (1985); see also Alaska Textile Co., 982 F.2d at 815-16.
 
 
 31
 Bouzo contends that his contractual relationships with Delta and Citibank conform to the prototypical model. According to Bouzo, after he and Delta executed the Consultancy Agreement, Delta arranged for its bank, Citibank, to issue a letter of credit requiring Citibank to pay Bouzo $2,000,000 upon the presentation to Citibank of a signed copy of the Delta-Petromin contract brokered by Bouzo. Once he presented this contract (i.e., the Heads of Agreement) to Citibank, Bouzo claims, he was entitled to payment under the letter of credit.
 
 
 32
 The district court concluded, however, that the May 21 Letter failed to qualify as a letter of credit under ARTICLE 5 OF THE N.Y.U.C.C. SECTION 5-103(1)(A)[3] of the N.Y.U.C.C. defines a letter of credit as
 
 
 33
 an engagement by a bank or other person made at the request of a customer and of a kind within the scope of this Article (Section 5-102) that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit.
 
 
 34
 To be "within the scope" of Article 5, a letter of credit issued by a bank must either "conspicuously state[ ] that it is a letter of credit or [be] conspicuously so entitled," id. § 5-102(1)(c), or "require[ ] a documentary draft or a documentary demand for payment," id. § 5-102(1)(a).[4] As long as the letter of credit is in writing and signed by the issuer, "no particular form of phrasing is required," id. § 5-104(1), and "[n]o consideration is necessary," id. § 5-105.
 
 
 35
 Citibank argues first that "the May 21 Letter lacks a promise to pay," and "is merely an advisory notice that Citibank ... will issue a 'bank pay order,' if certain future events occur." The question thus presented is whether Citibank's undertaking in the May 21 Letter to "issue an unconditional, irrevocable bank pay order" is "an engagement ... [to] honor ... [a] demand[ ] for payment" within the meaning of section 5-103(1)(a).
 
 
 36
 The phrase "bank pay order" is not a commonly used commercial term, and we have no clear guidance as to its meaning. Each party contends that the ambiguity in the term "bank pay order" should be resolved in its favor. It is ordinarily true, as Bouzo contends, that "[a]ny ambiguities in [a] letter of credit are construed against the bank." Bank of China v. Chan, 937 F.2d 780, 786 (2d Cir.1991); accord: Venizelos, S.A. v. Chase Manhattan Bank, 425 F.2d 461, 466 (2d Cir.1970) ("[I]f ambiguity exists, the words are taken as strongly against the issuer as a reasonable reading will justify."). It is not clear, however, that this rule should apply in an unusual case, such as this one, where the alleged letter of credit was initially drafted by Bouzo, its beneficiary. See United States v. Sun Bank, 609 F.2d 832, 833 (5th Cir.1980) (per curiam) ("[W]e must resolve any ambiguity in a letter of credit against the drafter...."). In any event, such a rule is inapplicable to the preliminary question, at issue here, whether the May 21st Letter is in fact a letter of credit.
 
 
 37
 We must resolve any documentary ambiguity in Bouzo's favor at this stage of the proceedings, because in ruling upon a motion for summary judgment, we construe ambiguous contractual terms in favor of the party opposing the motion. See Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 429 (2d Cir.1992). Thus, "[w]e have repeatedly held that, in a contract dispute, summary judgment may be granted only where the language of the contract is unambiguous." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir.1996); see also Sayers v. Rochester Tel. Corp. Supplemental Management Pension Plan, 7 F.3d 1091, 1094 (2d Cir.1993). Under New York law, whether a written contract is ambiguous is a question of law that we review de novo. See Sayers, 7 F.3d at 1094; W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639 (1990).
 
 
 38
 Applying these standards, we cannot agree with Citibank that its promise to "issue an unconditional, irrevocable bank pay order" unambiguously connotes something other than a promise to pay. Rather, the words "pay order" might plausibly be read to refer to a draft directing that payment be made to Bouzo. See e.g., N.Y.U.C.C. § 3-102(1)(b) ("An 'order' is a direction to pay...."). A "bank pay order" might simply be a cashier's check, a common form of negotiable instrument in which a bank draws a check upon itself. See generally Kaufman v. Chase Manhattan Bank, 370 F.Supp. 276, 278 (S.D.N.Y.1973) (describing cashier's check). It is clear, furthermore, that a cashier's check is a method of "payment." See id. at 279 ("A cashier's check circulates in the commercial world as the equivalent of cash[.]") (internal quotation omitted). On the other hand, the term "bank pay order" may simply mean a letter of credit, and if the May 21 Letter is merely a promise to issue a letter of credit, then it is not itself a letter of credit. At this stage of the litigation, however, the phrase "bank pay order" is sufficiently ambiguous to require further proceedings regarding its meaning.
 
 
 39
 The preclusion order in Bouzo I will not necessarily prevent Bouzo from establishing at trial his interpretation of the term "bank pay order." As described above, the preclusion order forbids Bouzo "from referring to, or offering documentary evidence of, any of the prior transactions with other parties" in which Bouzo originally claimed to have employed the term "bank pay order." Given the limited scope of the preclusion order, Bouzo should be permitted to establish through the use of other evidence that Citibank's promise to issue a "bank pay order" is the equivalent of a promise to honor a demand for payment. Of course, his ability to do so may be affected by any adverse inference that Bouzo II directed to be drawn from Bouzo's willful failure to produce documents from prior transactions that he had initially claimed would establish the meaning of "bank pay order" and illustrate its use in international transactions in which he had participated.
 
 
 40
 We disagree with the district court's view that summary judgment was appropriate because the May 21 Letter "fail[ed] even to specify the subject matter of the contract which Bouzo was to present to Citibank." Bouzo III at * 6. The N.Y.U.C.C. defines "documentary demand for payment" as a demand for payment, the "honor of which is conditioned upon the presentation of a document or documents." N.Y.U.C.C. § 5-103(1)(b). "Document" is defined expansively as meaning "any paper including document of title, security, invoice, certificate, notice of default and the like." Id.
 
 
 41
 Although the documents typically involved in letter of credit transactions are papers relating to the merchandise to be transferred pursuant to an underlying sales contract, such as documents of title or inspection certificates, the language of section 5-103(1)(b) is not so limited, and extends to "any paper." By contrast, section 5-102(1)(b), which applies when the issuer is a person other than a bank, specifically requires that the "demand for payment be accompanied by a document of title." As the Official Comment to section 5-102 explains, paragraph (1)(a) "states that whenever the promise to honor is conditioned on presentation of any piece of paper, the transaction is within this Article whereas paragraph (1)(b) makes automatic application of the Article to transactions involving issuers other than banks dependent upon the requirement of a document of title." N.Y.U.C.C. § 5-102 cmt. 1 (emphasis added).
 
 
 42
 Furthermore, the presentation to Citibank of a copy of the signed Heads of Agreement served the same purpose as the submission of documents of title under a typical commercial letter of credit in the context of the sale of goods. Just as documents of title demonstrate to the issuing bank that the beneficiary of the credit has fulfilled his contractual obligations by effecting the required transfer of merchandise, so Bouzo's presentation of the Heads of Agreement served the evidentiary function of showing that he had performed his underlying obligation to broker a Delta-Petromin contract.
 
 
 43
 Citibank argues, however, that the documentary demand requirement is not satisfied because the May 21 Letter is ambiguous about what document is required to be submitted, referring only to "the signed contract between Petromin and [Delta]." Citibank relies upon the well settled requirement that to be entitled to payment under a letter of credit, the beneficiary must present documents that conform strictly with the terms of the letter of credit. See Beyene v. Irving Trust Co., 762 F.2d 4, 6 (2d Cir.1985); Western Int'l Forest Prods., 860 F.Supp. at 153. "The corollary to the rule of strict compliance is that the requirements in letters of credit must be explicit...." Marino Indus. Corp. v. Chase Manhattan Bank, 686 F.2d 112, 115 (2d Cir.1982) (citing Sun Bank, 609 F.2d at 833).
 
 
 44
 The requirement of explicitness is important both to the issuing bank and to the beneficiary of a letter of credit. A beneficiary is entitled to know precisely what performance will entitle it to payment. See id. A bank must be certain that its payment is clearly authorized by the letter of credit, thereby, inter alia, assuring its ability to recover the payment from the customer in whose behalf it is made. Thus, there is force to Citibank's argument that the unelaborated reference in the May 21 Letter to the presentation of "the signed contract between Petromin and [Delta]" is not adequately explicit to trigger an obligation to pay.[5]
 
 
 45
 That language, however, does not stand alone. The May 21 Letter requires that the agreement with Petromin be presented to Citibank "by [Delta]." By requiring the presentation to be made by Delta, the May 21 Letter would appear to foreclose a subsequent claim by Delta that Citibank had made an unauthorized payment to Bouzo. The situation would be somewhat akin to the presentation of admittedly nonconforming documents by a letter of credit beneficiary to the issuing bank "on an approval basis," allowing the bank to protect itself by securing its customer's approval of payment. See Alaska Textile, 982 F.2d at 818-19; First Am. Nat'l Bank v. Alcorn, Inc., 361 So.2d 481, 486-87 (Miss.1978). We conclude that the summary judgment in favor of Citibank may not be affirmed on the basis of an inadequate description in the May 21 Letter of the documentation that would trigger payment under the letter of credit.
 
 
 46
 This does not mean that this aspect of the case is free from difficulty. It is unclear, for example, wholly aside from Citibank's claim that Flocco and Delta collaborated in a scheme to defraud Citibank, see supra note 1, whether the events of July 23, 1986 constituted the "presentation" of the Heads of Agreement to Citibank "by [Delta]" that is required by the May 21 Letter. It is also unclear whether the "copy" of the "Heads of Agreement" whose delivery to Citibank was recited in the July 23 Letter was a "duplicate original" thereof, as required by the May 21 Letter. The July 23 Letter appears to recite a past, rather than require a future, payment to Bouzo, although it is clear that no payment had been made. In addition, the situs of the payment recited in the July 23 Letter (a bank in Luxembourg) is different from the situs (a bank in Saudi Arabia) specified in the May 21 Letter.
 
 
 47
 We note that a good deal of the oral argument of this appeal, and significant postargument correspondence, was directed to the question whether Bouzo was pursuing only a letter of credit claim premised upon the May 21 Letter, or also a contract claim based upon that letter and other documents in the case, primarily the April 14 Letter. Bouzo's initial complaint stated in substance only a letter of credit claim. Following a change of counsel, Bouzo was permitted to file an amended complaint which did not explicitly allege a letter of credit claim, but rather pled that "[t]he April 14 Letter and the May 21 Letter constituted a contract pursuant to which Citibank promised to pay [Bouzo] the sum of $2 million upon [his] negotiation of and presentation to Citibank of proof of the Petromin-Delta Agreement."[6] The district court observed in its summary judgment opinion, however, that Bouzo's memorandum in opposition to Citibank's motion for summary judgment "relie[d] solely on the argument that the May 21st letter is an enforceable letter of credit." Bouzo III at * 9. Similarly, Bouzo's briefs on appeal advance only this contention, although Bouzo asserted at oral argument that he relies upon both claims.
 
 
 48
 Citibank asserts that if the April 14 Letter is brought into play to support Bouzo's claim under the May 21 Letter, there result the fatal difficulties that the April 14 Letter requires (1) the actual purchase of oil by Delta from Petromin, which never occurred, and (2) a "three year contract cycle," whereas the term of the Heads of Agreement is one year. In any event, Bouzo III addressed only Bouzo's letter of credit claim, as does this opinion.
 
 
 49
 Finally, Bouzo argues on appeal that Bouzo II improperly allowed an adverse inference to be drawn against Bouzo as a result of his nonproduction of documents that he had undertaken to produce in the course of his deposition testimony. On the contrary, in view of Bouzo's (1) incredible testimony at his second deposition concerning his total failure to recall transactions about which he had testified in his initial deposition, and (2) asserted destruction of documents (as the transactions allegedly concluded in the interim between his two depositions) that he had repeatedly undertaken in his initial deposition testimony to produce, the district court acted well within its discretion in concluding that an appropriate adverse inference might be drawn against Bouzo. See Fera v. Roche, 147 F.R.D. 58, 59 (S.D.N.Y.1993); Rivera v. O'Neill, 146 F.R.D. 93, 94 (S.D.N.Y.1993); cf. Fed.R.Civ.P. 37(b)(2)(A) (when discovery order is disobeyed, an order may be entered that the matters regarding which the disobeyed order was made or any other designated facts shall be taken to be established). The precise nature and extent of the allowable inference or inferences to be drawn are matters submitted to the discretion of the district court in the first instance.
 
 Conclusion
 
 50
 The judgment of the district court is vacated and the case is remanded. The parties shall bear their own costs.
 
 
 
 [1]
 Magistrate Judge Gershon was subsequently appointed a judge of the United States District Court for the Eastern District of New York
 
 
 [2]
 Throughout this litigation, Citibank has maintained that Flocco lacked the authority to issue these letters and a subsequent letter dated July 23, 1986, and that Flocco and others, including Delta, were engaged in a scheme to defraud Citibank. For the purposes of Citibank's motion for summary judgment, the district court assumed that Flocco had acted within the scope of his authority, and for the purposes of this appeal, we make the same assumption
 
 
 [3]
 As previously noted, subject matter jurisdiction in this case is premised upon diversity of citizenship, and it appears to be undisputed (and indisputable) that New York provides the governing substantive law. Section 5-102(4) of the N.Y.U.C.C. provides that: "Unless otherwise agreed, this Article 5 does not apply to a letter of credit ... if by its terms or by agreement, course of dealing or usage of trade such letter of credit ... is subject in whole or in part to the Uniform Customs and Practice for Commercial Documentary Credits [ (the 'U.C.P.') ]...." The U.C.P. is a compilation of internationally accepted commercial practices that is often incorporated into parties' private contracts. See, e.g., Western Int'l Forest Prods., Inc. v. Shinhan Bank, 860 F.Supp. 151, 153 (S.D.N.Y.1994); Semetex Corp. v. UBAF Arab Am. Bank, 853 F.Supp. 759, 769, (S.D.N.Y.1994), aff'd, 51 F.3d 13 (2d Cir.1995). Because the May 21 letter does not by its terms subject itself to the U.C.P., and neither party contends that the U.C.P. should apply because of agreement, course of dealing, or usage of trade, we apply the N.Y.U.C.C. See United Bank Ltd. v. Cambridge Sporting Goods Corp., 41 N.Y.2d 254, 258 n. 2, 392 N.Y.S.2d 265, 269 n. 2, 360 N.E.2d 943, 947 n. 2 (1976)
 
 
 [4]
 A letter of credit "may be either revocable or irrevocable," N.Y.U.C.C. § 5-103(1)(a); see also J. Zeevi & Sons, Ltd. v. Grindlays Bank (Uganda) Ltd., 37 N.Y.2d 220, 225, 371 N.Y.S.2d 892, 897, 333 N.E.2d 168, 171, cert. denied, 423 U.S. 866, 96 S.Ct. 126, 46 L.Ed.2d 95 (1975), and may contain an expiration date, see Thomas M. Quinn, et al., Uniform Commercial Code Commentary and Law Digest, p 5-106(A) Editorial Commentary (1990 cumm. supp. no. 1). Thus, the language in the May 21 Letter providing that it would "automatically become null and void if no contract is concluded between Petromin and [Delta]" by August 31, 1986 does not affect the status of the letter
 
 
 [5]
 We repeat that although the normal rule is that ambiguities in a letter of credit are resolved against the bank, Bank of China, 937 F.2d at 786, the application of that rule is drawn into question in this case by Bouzo's role in substantially drafting the May 21 Letter, see Sun Bank, 609 F.2d at 833
 
 
 [6]
 The district court permitted Bouzo to file the amended complaint insofar as it stated a claim for breach of contract, but denied permission to state new claims for fraud, negligent misrepresentation, and negligent supervision. See Bouzo III at * 7-* 8. Bouzo does not contest that denial on appeal