**15-2776**
*Mago Int'l, LLC v. LHB AG*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

─────────────

August Term 2015

(Argued: June 15, 2016     Decided: August 15, 2016)

Docket No. 15-2776

MAGO INTERNATIONAL,

*Plaintiff-Appellant,*

-v.-

LHB AG,

*Defendant-Cross-Claimant-Appellee.*[*]

─────────────

─────────────

[*] The Clerk of Court is respectfully directed to amend the caption as set forth above.

Before:

STRAUB, WESLEY, and LIVINGSTON, *Circuit Judges*.

_____

Appeal from an order and judgment of the United States District Court for the Southern District of New York (McMahon, *J.*), entered after resolution of cross-motions for summary judgment. The District Court granted summary judgment to defendant LHB AG on the basis of plaintiff Mago International's failure to comply strictly with the terms of a standby letter of credit. We AFFIRM the order and judgment of the District Court.

_____

THEODORE GEIGER, New York, NY, *for Plaintiff-Appellant.*

MARK A. BERMAN (Jeremy B. Stein, *on the brief*), Hartmann Doherty Rosa Berman & Bulbulia, LLC, New York, NY, *for Defendant-Cross-Claimant-Appellee.*

_____

WESLEY, *Circuit Judge*:

Mago International ("Mago") appeals from an order and judgment of the United States District Court for the Southern District of New York (McMahon, *J.*), in which judgment was entered in favor of LHB AG ("LHB") after resolution of cross-motions for summary judgment. The central question concerns whether Mago complied with terms of a standby letter of credit ("SLOC") issued by LHB—specifically, whether the submission of unsigned copies of bills of lading complied with the letter's requirement that Mago provide a "photocopy of [a bill of lading]

evidencing shipment of the goods to the applicant." App. 101. The District Court concluded that the unsigned copies did not evidence shipment and thus Mago did not strictly comply. We agree and accordingly affirm the order and judgment of the District Court.

## BACKGROUND

In 2011, Mago—a company based in New York—entered into a contract to sell chicken, beef, and other meat products to NTP Genita ("Genita"), a company based in Pristina, Kosovo. As is common in international transactions, in order to ensure it received payment, Mago required Genita to obtain an SLOC, issued by Bank for Business, a Kosovar bank, and confirmed by LHB. Under the terms of the letter, if Genita failed to pay Mago within forty-five days after the date of an invoice, Mago could present a defined set of documents to LHB and obtain payment on the SLOC. Among the documents LHB required was a "photocopy of B/L evidencing shipment of the goods to the applicant." App. 101.

Mago shipped twelve containers of products to Genita under four invoices, designated 199(1-5), 199(6-7), 208(1-2), and 208(3-5), respectively. Genita defaulted on all four invoices. Mago tendered its first set of documents to LHB on September 19, 2012, including two unsigned bills of lading for each of the two 199 invoices. App. 114–21. LHB rejected this tender for, *inter alia*, not containing signed bills of lading. App. 129. Mago's second tender cured other deficiencies identified by LHB but contained the same unsigned bills of lading for the two 199 invoices. App. 139–44. LHB again rejected the tender, emailing Mago's managing director that the unsigned bills of lading were not in conformity with the terms of the letter. Mago's third tender occurred on October 8, 2012, the last day possible to

submit a demand for payment. As all previous tenders had done, this one contained signed bills of lading for the 208 invoices—but instead of unsigned bills of lading for the 199 invoices, Mago provided two telexes from the shipping company, Mediterranean Shipping Company ("MSC"). These telexes announced that MSC had retained the original, signed bills of lading in its files and authorized release of the shipments to Genita without the latter presenting the original bill of lading. App. 160, 166. LHB rejected this tender as well. Finally, on October 11, 2012, Mago tendered a set of documents containing signed bills of lading for each invoice. App. 172–84. LHB rejected this tender as untimely. App. 185.

Mago then filed suit in the Southern District alleging wrongful dishonor of the SLOC and naming both LHB and Bank for Business as defendants.[2] On April 1, 2015, both LHB and Mago cross-moved for summary judgment. The District Court issued its order granting LHB's motion and denying Mago's motion on August 4 and entered judgment on August 6. Mago timely appealed from both the order and the judgment.

## DISCUSSION

An SLOC is an agreement by a bank to pay a beneficiary on behalf of a customer who obtains the letter, if the customer defaults on an obligation to the beneficiary. *See, e.g.*, *Tudor Dev. Grp. v. U.S. Fid. & Guar. Co.*, 968 F.2d 357, 360 (3d Cir. 1992). "Originally devised to function in international trade, a letter of credit reduced the risk of nonpayment in cases where credit was extended to strangers in distant places" *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 682 (2d Cir. 1983). "The

---

[2] However, Bank for Business was never served with the complaint, and the District Court dismissed it from the case. App. 238.

4

issuing bank, or a bank that acts as confirming bank for the issuer, takes on an absolute duty to pay the amount of the credit to the beneficiary, so long as the beneficiary complies with the terms of the letter." *Beyene v. Irving Tr. Co.*, 762 F.2d 4, 6 (2d Cir. 1985). However, "[i]n order to protect the issuing or confirming bank, this absolute duty does not arise unless the terms of the letter have been complied with strictly." *Id.* "Adherence to this rule ensures that banks, dealing only in documents, will be able to act quickly, enhancing the letter of credit's fluidity. Literal compliance with the credit therefore is also essential so as not to impose an obligation upon the bank that it did not undertake and so as not to jeopardize the bank's right to indemnity from its customer." *Voest-Alpine*, 707 F.2d at 682–83. Therefore, "[i]n determining whether to pay, the bank looks solely at the letter and the documentation the beneficiary presents[] to determine whether the documentation meets the requirements in the letter." *Marino Indus. Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir. 1982). "The corollary to the rule of strict compliance is that the requirements in letters of credit must be explicit and that all ambiguities are construed against the bank. Since the beneficiary must comply strictly with the requirements of the letter, it must know precisely and unequivocally what those requirements are." *Id.* (citations omitted).

As the District Court noted, resolution of this case turns on whether Mago strictly complied with the terms of the SLOC—specifically, whether presentation of unsigned copies of bills of lading satisfy the credit's requirement that Mago submit a "photocopy of B/L evidencing shipment of the goods to the applicant." App. 101.[3] Mago argues principally that, under the

---

[3] We review *de novo* a district court's grant of summary judgment, and "[w]here there are no disputed issues of material fact, our task is to

Uniform Customs and Practice for Documentary Credits (the "UCP") and interpretive guidance issued by the International Chamber of Commerce Banking Commission, where a letter of credit requires "copies" of transport documents like bills of lading, those copies do not need to be signed. Although the letter does explicitly incorporate the UCP and even assuming Mago interprets the UCP correctly, Mago's argument fails for the simple reason that LHB's letter did not simply require a copy of a bill of lading, but required one that "evidenc[ed] shipment of the goods to the applicant." App. 101. Thus, whatever general guidelines are applicable, the copies here were required to evidence shipment. Because the bill of lading at issue required a signature to evidence shipment, the presentation of those documents did not strictly comply with the terms of the letter.

Even though the unsigned copies of the bills of lading here reflect the name of a ship and purported date of shipment, absent the carrier's signature, there is no evidence that the shipping information on the bill of lading reflects the actual shipment of the goods—precisely the information that the SLOC requires. Notably, the signature block on the bills where the carrier would have signed is immediately preceded by language to that effect:

> RECEIVED by the Carrier in apparent good
> order and condition (unless otherwise stated

determine whether the district court correctly applied the law." *Mario v. P&C Food Mkts., Inc.*, 313 F.3d 758, 764 (2d Cir. 2002) (internal quotation marks omitted). "We must resolve any documentary ambiguity in [Mago's] favor at this stage of the proceedings, because in ruling upon a motion for summary judgment, we construe ambiguous contractual terms in favor of the party opposing the motion." *Bouzo v. Citibank, N.A.*, 96 F.3d 51, 58 (2d Cir. 1996).

6

> herein) the total number or quantity of Containers or other packages or units indicated in the box entitled Carrier's Receipt for carriage subject to all the terms and conditions thereof from the Place of Receipt or Port of Loading to the Port of Discharge or Place of Delivery, whichever is applicable.

App. 181. Without the carrier's signature, the presented copy of the bill of lading does not appear to fulfill the terms of the SLOC. While copies of bills of lading may not generally require signatures, *see* INTERNATIONAL STANDARD BANKING PRACTICE FOR THE EXAMINATION OF DOCUMENTS UNDER DOCUMENTARY CREDITS SUBJECT TO UCP 600 ("ISBP") ¶ 20, the copies of the bill of lading here appear to require such a signature to satisfy the SLOC's requirement that the document "evidenc[e] shipment of the goods to the applicant." App. 101; *see also* UCP 600, Art. XIV ("[B]anks will accept the document as presented if its content *appears* to fulfill the function of the required document." (emphasis added)). Although Mago presented telexes that it claimed also evidenced shipment, those telexes cannot satisfy the letter's requirement that such evidence be contained in a bill of lading. For the same reason, Mago's argument that the SLOC did not explicitly require a signature is unavailing; it explicitly required evidence of shipment in the bill of lading, and the bill of lading at issue required a signature for confirmation of shipment. Accordingly, neither the unsigned bills of lading nor the telexes tendered by Mago in its presentations to LHB satisfied the requirement of strict compliance, and LHB was entitled to reject the presentations. *See Beyene*, 762 F.2d at 6–7.

Mago finally argues that the District Court erred in granting summary judgment to LHB on the entire amount of the SLOC since Mago presented conforming documents with respect

to the 208 invoices covering five containers of food products. Instead, Mago contends, the District Court should have not have granted summary judgment to LHB on those invoices. But Mago's complaint does not present invoice-specific claims to the District Court, nor does it anywhere request at least partial payment on the 208 invoices. App. 18–21, 45–47. During oral argument on the summary judgment motions, the District Court expressly asked for clarification on the differences between the 199 and 208 invoices—Mago still did not contend it was owed at least partial payment on the SLOC. Supp. App. 177–86. In its summary judgment order, the District Court expressly noted that Mago had briefed nothing regarding the 208 invoices and further noted that that it did not know whether that was "because Mago was paid with respect to the 208 invoices or because the failure to present conforming documents for the 199 invoices meant that Mago forfeited payment even for invoices that did on their face confirm to the terms of Item 46A." App. 242. Mago did not move for reconsideration or otherwise argue this point; it simply filed a notice of appeal.

"We have repeatedly held that if an argument has not been raised before the district court, we will not consider it . . . ." *Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 401 (2d Cir. 1992) (citation omitted). We have, on occasion, permitted new arguments in support of "a proposition presented below." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221 (2d Cir. 2006). But Mago is not making a new argument for a proposition made below; it never requested this relief from the District Court. In fact, Mago still has not made an argument that the law permits (much less requires) partial payment on an SLOC.[4] It has cited

---

[4] LHB's briefing argues that while the UCP permits partial draws on the SLOC, Mago never made a request for a partial draw and thus

no case law on appeal, merely requesting vacatur and remand to the District Court for consideration in the first instance—on the basis of what theory we have not been told. Where a party has had such numerous occasions to request certain relief from the District Court and, failing to do so, has presented no legal argument of error to us on appeal, we will not set aside the District Court's judgment.

## CONCLUSION

We have considered all of Mago's arguments and find them to be without merit. For the reasons stated in this opinion, we AFFIRM the order and judgment of the District Court.

---

LHB could only evaluate the presentation as a whole. Because we hold Mago forfeited its claims to partial payment, we need not address whether LHB has correctly stated the law governing partial draws.