**OCEAN RIG ASA, Plaintiff,**

v.

**SAFRA NATIONAL BANK OF NEW YORK, Defendant.**

**No. 99 Civ. 1434(SAS).**

United States District Court,
S.D. New York.

July 14, 1999.

194

Jack A. Greenbaum, Healy & Baillie, LLP, New York City, for plaintiff.

Danforth Newcomb, Daniel D. Edelman, Laurie R. Blank, Shearman & Sterling, New York City, for defendant.

## AMENDED OPINION AND ORDER

SCHEINDLIN, District Judge.

### I. Introduction

Plaintiff Ocean Rig ASA ("Ocean Rig") seeks redress for the allegedly wrongful dishonor by Defendant Safra National Bank of New York ("Safra") of a standby letter of credit in the amount of $15,000,-000. Defendant moves to dismiss all of Plaintiff's claims under Fed.R.Civ.P. 12(b)(6) or, in the alternative, moves for summary judgment pursuant to Rule 56.

Ocean Rig cross-moves for summary judgment on three of its six causes of action. For purposes of summary judg-

ment, Ocean Rig and Safra stipulate to all material issues of fact. *See* Plaintiff's Statement Pursuant to Local Rule 56.1(a) ("Pl.56.1"); Defendant's Statement Pursuant to Local Rule 56.1(a) ("Def.56.1").

For the reasons that follow, Defendant's motions to dismiss and for summary judgment are denied, and Plaintiff's motion for summary judgment on its third and fourth causes of action is granted.

## II. *Jurisdiction*

This Court has both federal question and diversity jurisdiction in this case. Federal question jurisdiction arises under the Edge Act as this is a private suit against a federally-chartered commercial bank. *See* 12 U.S.C. § 632. This Court also has diversity jurisdiction under 28 U.S.C. § 1332, as Defendant is incorporated in New York, Plaintiff is a citizen of a foreign state, and the amount in controversy exceeds $75,000.

## III. *Background*

### A. *The Underlying Agreement Giving Rise to the Dispute*

Ocean Rig is a Norwegian company, based in Oslo, engaged in the offshore oil drilling business. This corporation's principals, Ocean Rig AS 1 and Ocean Rig AS 2 ("Owners"), each own one offshore drilling rig. *See* Complaint ("Compl.") ¶¶ 3–4. Owners, desiring to obtain contracts for their drilling rigs, engaged in dealings with Maritima Petroleo e Engenharia Ltda, Rio de Janeiro, Brazil ("Maritima Petroleo").

On November 18, 1998, Owners and Maritima Petroleo agreed that Maritima Petroleo would undertake to secure contracts with third parties for Owners' drilling rigs. *See id.* ¶ 7. They further agreed that if Maritima Petroleo failed to procure such contracts by 4:00 p.m. Brazilian time

on February 5, 1999, Maritima Petroleo would compensate Owners $15,000,000. *See id.* ¶ 8; Affidavit of Christian Huseby, President of Ocean Rig, dated April 15, 1999, ¶ 3 ("Huseby Aff"). Maritima Petroleo further agreed to provide security for its $15,000,000 obligation to Owners by procuring a Standby Letter of Credit in that amount in favor of the Owners. *See* Compl. ¶ 8; Plaintiff's Notice of Cross Motion for Summary Judgment ("Pl.'s Not."), Exh. 1, Agreement for Provision of Standby Letter of Credit, dated November 18, 1998 ("Agreement"). Finally, the parties agreed on the choice of law governing the Standby Letter of Credit.[1] *See* Pl.'s Not., Exh. 3, Standby Letter of Credit No. S–0612, dated November 19, 1998 ("LOC No. S–0612").

The Agreement specified that if Maritima Petroleo failed to secure the third-party contracts by February 5, Owners could present a "demand letter" and the Standby Letter of Credit to the issuing bank, Safra. *See* Pl.'s Not., Exh. 1, Agreement, at ¶ 1.4. The Standby Letter of Credit and Demand Letter could be presented by Ocean Rig, transmitted via Chase Manhattan Bank, within a three day window—no earlier than 9:00 a.m. New York time on February 8, 1999 and no later than 4:00 p.m. New York time on February 11, 1999. *See* Pl.'s Not., Exh. 3, LOC No. S–0612, ¶¶ 6–7. Additionally, the Standby Letter of Credit set forth the number of signatures required on the Demand Letter, the acceptable signatories from Ocean Rig, and the requirements for validation of the signatures. *See id.* ¶ 2.

On November 18, 1998, the same day as the execution of the Agreement, Maritima Petroleo caused its affiliate Maritima Overseas, Inc., of Tortola, British Virgin

---

1. The Standby Letter of Credit specifies that it will be governed by the laws of the State of New York and by the International Chamber of Commerce, Publication No. 500, *Uniform Customs and Practice for Documentary Credits* (1993 Revision) ("UCP"). *See* Compl., Exh. 1

¶ 11. Where a letter of credit is made expressly subject to the UCP, the UCP governs rather than Article 5 of New York's Uniform Commercial Code. *See* N.Y.U.C.C. § 5–102(4) (McKinney 1993).

Islands ("Maritima Overseas"), to apply for the Standby Letter of Credit.

### B. *The Amendment to the Agreement*

Owners, in turn, assigned their agent, Ocean Rig, as their beneficiary of the Standby Letter of Credit. *See* Pl.'s Not., Exh. 5, Letter from Ocean Rig to Maritima, dated November 23, 1998. Maritima Petroleo acknowledged to Ocean Rig in writing that the Standby Letter of Credit named Ocean Rig as the beneficiary on behalf of Owners; Ocean Rig accepted its assignation as beneficiary. *See id.* On November 19, Maritima Overseas applied to Safra, for the Standby Letter of Credit. Bernhard Haukali, Norwegian counsel for Ocean Rig, sent Safra a draft "form" of the proposed standby letter of credit. *See* Pl.'s Not., Appendix to Exh. 2, Ocean Rig Draft LOC ("Draft LOC"). This draft was received by Safra's employee, Jose Da Fonseca, who modified and finalized it. *See* Affidavit of Jose Da Fonseca, April 28, 1999, ¶ 2 ("Fonseca April Aff."). Safra issued the letter, LOC No. S–0612, on November 19, 1998. *See* Pl.'s Not., Exh. 3., LOC No. S–0612.

This original letter specified, erroneously, that the Standby Letter of Credit would be drawn on the account of Maritima Petroleo; it did not reflect the assignation of liability to Maritima Overseas. *See id.* ¶ 1. Maritima Petroleo and Safra then sought to amend letter No. S–0612 to reflect that the $15,000,000 would be drawable on the account of Maritima Overseas. Maritima Petroleo and Safra contacted Ocean Rig to apprise it of the need for this amendment. The amendment issued by Safra on November 30, 1998, and accepted by Ocean Rig (*see* Fonseca April Aff., Exh. C, Ocean Rig fax to Safra, dated January 8, 1999, confirming acceptance), reads:

WE HEREBY AMEND THIS STANDBY LETTER OF CREDIT AS FOLLOWS:

*1*-WHERE IT READS MARITIMA PETROLEO E ENGENHARIA LTDA, RIO DE JANEIRO, BRASIL, AMENDED TO READ *MARITIMA OVER-*

SEAS INC., TORTOLA, BRITISH VIRGIN IS-LANDS.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Compl., Exh. 2., Amendment dated November 30, 1998 ("Amendment") (capitalization, spacing, and emphasis in original.)

### C. *Circumstances Giving Rise to the Dispute*

By February 5, 1999, Maritima Petroleo had not secured the third-party contracts for Owners, triggering Ocean Rig's right to present the Standby Letter of Credit and Demand Letter to Safra. On February 8, 1999, Tore Valderhaug, CFO of Ocean Rig, and Bernhard Haukali, Counsel for Ocean Rig, flew from Oslo, Norway, to New York, in order to present the Demand Letter ("Demand Letter 1," Compl., Exh. 3), original Standby Letter of Credit No. S–0612, and Amendment to Chase Manhattan Bank. *See* Affidavit of Bernhard Haukali, April 14, 1999, ¶ 12 ("Haukali Aff."). Chase conveyed the documents to Safra on February 8. *See* Pl.'s 56.1, ¶ 13. On the morning of February 10, one day before the expiration of the Standby Letter of Credit, the assistant treasurer of Safra, Lucilia Amador, notified Chase that the payment on the letter would be made to Ocean Rig's account on Friday, February 12. *See* Compl. ¶ 22.

Later that afternoon, Amador notified Chase that payment would not be made due to discrepancies between the materials submitted and the requirements set forth in the Standby Letter of Credit and the Amendment. *See* Compl. ¶ 23. At 4:35 p.m. on February 10, 1999, Safra sent Chase a Swift telex identifying the errors in the materials submitted by Ocean Rig. *See* Defendant's Notice of Motion to Dismiss and for Summary Judgment ("Def.'s Not."), Exh. D, "Swift" telex transmission report, February 10, 1998. Safra also called Haukali to inform him that payment would not be made. *See* Affidavit of Jose Da Fonseca, March 30, 1999 ("Fonseca March Aff."), ¶ 9. This telephone message

arrived in Oslo after the close of business on the 10th (*see* Fonseca April Aff., ¶ 9) and was received by Ocean Rig and its counsel on the 11th. *See* Compl. ¶ 25.

On February 11, Ocean Rig notified Safra that the discrepancies it identified were, in fact, correct terms used in accordance with the requirements of the original Standby Letter of Credit and Amendment thereto. Nonetheless, Ocean Rig issued a second Demand Letter ("Demand Letter 2," Compl., Exh. 4) with changes aimed at curing the defects protested by Safra. *See* Compl. ¶ 25. On February 16, five days after the expiration of the Standby Letter of Credit, Fonseca told Ocean Rig's U.S. counsel, Jack Greenbaum, that Demand Letter 2 contained the same defects as Demand Letter 1 and would not be honored. *See* Compl. ¶ 25.

### D. The Alleged Discrepancies in the Documentation

Safra alleges two discrepancies in Demand Letters 1 and 2:(a) that the Demand Letters did not conform to the Amendment; and (b) that the signature validations on the Demand Letters did not conform to the signature validations clause of the Standby Letter of Credit. Safra contends that the Demand Letters did not correctly incorporate the two changes required by the Amendment. Ocean Rig

asserts that the Amendment required a single change, which Demand Letter 1 incorporated. Safra further contends that the signature validation clause of the original Standby Letter of Credit required the signatures of Ocean Rig's principals to be notarized both by way of Apostille[2] and validation by a U.S. embassy or consulate ("consularization"). Plaintiff asserts that the original contract provides that Apostille and consularization are alternative methods of validation.

## IV. Summary Judgment

### A. Legal Standard for Summary Judgment

Defendant's motions to dismiss and for summary judgment and Plaintiff's cross-motion for summary judgment are identical in the issues they present. Summary judgment is appropriate as there are no disputed issues of material fact and the issues can be decided as a matter of law. *See* Pl.'s 56.1; Def.'s 56.1.

A motion for summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] Fed.R.Civ.P. 56(c); *see also*

**2.** An "Apostille" is a certificate of legalization specified by The Hague Convention Abolishing the Requirement of Legalisation for Foreign Public Documents, Fed.R.Civ.P., appended to Rule 44. This Convention requires signatory countries to legalize documents by Apostille only; the Apostillization is similar to notarization. "Consularization," the method of legalization replaced by the Convention and performed for transactions involving countries not signatory to the treaty, requires approval of the document by the embassy or consulate officials of the countries of the parties involved.

**3.** There remain one contested issue of fact and one discrepancy on the facts admitted by the parties. Neither are material to the outcome of the dispute. The issue of fact is whether or not conversations transpired between the principals of Maritima Petroleo and

Ocean Rig as to the type of signature legalization acceptable on the Demand Letter. To support its interpretation, Safra argues that the Chairman and President of Maritima Petroleo, German Efromavich, told Plaintiff's Chairman, Tom B. Knudsen, and Norwegian counsel, Bernhard Haukali, that he would only accept consularization. *See* Declaration of German Efromavich, April 28, 1998 ("Efromavich Decl."). Knudsen and Haukali deny such conversations. *See* Declaration of Tom B. Knudsen, May 5, 1999; Supplementary Declaration of Bernhard Haukali, May 5, 1999. The Court need not resolve this dispute because: 1) strict compliance with the face of the document is required (discussed *infra*), making the subjective intent of the parties as to the meaning of the terms irrelevant; and 2) the independence principle governing letters of credit states that the bank must "determine on the basis of the docu-

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is material if its resolution could affect the outcome of the dispute. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Converse v. General Motors Corp.*, 893 F.2d 513, 514 (2d Cir.1990). The moving party has the burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997).

In determining whether summary judgment should be granted, the court resolves all ambiguities and draws all reasonable inferences against the moving party. *See D'Amico v. City of New York*, 132 F.3d 145, 148 (2d Cir.1998). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party on a material issue of fact, summary judgment is improper. *See Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir.1997); *see also Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). The court must also examine "the substantive law applicable to the underlying litigation since that law dictates which facts are material." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir.1993) (*citing Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

Actions on letters of credit are well-suited to determination on motions for summary judgment "because they normally present solely legal issues related to an exchange of documents." *Banque Worms v. Banque Commerciale Privee*, 679 F.Supp. 1173, 1178 (S.D.N.Y.1988), *aff'd*,

ments alone whether or not they appear on their face to be in compliance with the ... conditions of the Credit" without inquiry into the underlying agreements or understandings between the parties to the commercial transaction. UCP, Art. 13 a. Thus, the intent and understanding of Maritima Petroleo does not bear on the contract between Ocean Rig and Safra.

849 F.2d 787 (2d Cir.1988). As such, letters of credit differ from contracts, where "[w]e have repeatedly held that, in a contract dispute, summary judgment may be granted only where the language of the contract is unambiguous." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir.1996).

### B. Standard of Analysis for Letters of Credit

Letters of credit serve an important function in international commerce, providing unfamiliar parties with the security necessary to deal with each other. Letters of credit accomplish this end by interposing the credit and credibility of a known, solvent institution, usually a bank, between the parties. A standard transaction involving a letter of credit creates three independent relationships: 1) a commercial transaction between a buyer and a seller; 2) an agreement between the buyer and its bank, in which the bank agrees to issue a letter of credit supporting the buyer's obligations to the seller, who is the beneficiary of the letter of credit; and 3) the relationship between the bank and the beneficiary, based on the bank's commitment to honor the draft upon the beneficiary's presentation of documentation required by the terms of the credit letter. *See 3Com Corporation v. Banco do Brasil, S.A.*, 171 F.3d 739, 741 (2d Cir.1999); *see also Voest–Alpine Int'l v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 682 (2d Cir.1983); *First Commercial Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287, 294, 486 N.Y.S.2d 715, 475 N.E.2d 1255 (1985).

■ The two central tenets governing the construction of letters of credit, which

The discrepancy between Plaintiff's 56.1(a) Statement and Defendant's 56.1 Statement is that Defendant "admits" that the Amendment served to modify both identifications of "Maritima Petroleo" in the Standby Letter of Credit, and, therefore, in the Demand Letter reciting the language of Part 2 of the Standby Letter of Credit. *See* Def. 56.1(b) Statement, ¶ 11. This is not a fact question; rather, it is a question of law to be decided by the Court.

assist in maintaining their reliability and liquidity, are the principles of strict compliance and independence. *See 3Com,* 171 F.3d at 741; *Voest,* 707 F.2d at 682; International Chamber of Commerce, Publication No. 500, *Uniform Customs and Practices for Documentary Credits,* arts. 3 a, 13 a, and 14 b ("UCP").

### 1. Strict Compliance

■ The strict compliance standard means that the conditions of the letter of credit must be complied with precisely by all parties; documents that are "nearly the same" will not suffice. *Voest,* 707 F.2d at 682; *see generally Marino Industries v. Chase Manhattan Bank, N.A.,* 686 F.2d 112, 114–15 (2d Cir.1982); *Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461, 464–65 (2d Cir.1970). The Second Circuit has upheld the dishonor of letters of credit for errors such as the misspelling of the names appearing on required documents, *see Beyene v. Irving Trust Co.,* 762 F.2d 4, 7 (2d Cir.1985)—although nonmeaningful errors, such as obvious typographical errors ("Smithh" instead of "Smith"), will not justify dishonor. *Id.* at 6. Even under the strict compliance standard, "[e]rrors ... that do not call upon the reviewing bank officer to exercise discretion on a commercial matter, [but] only to exercise discretion as a banker," or errors that "did not compel an inquiry into the underlying commercial transaction ... [do] not justify dishonor...." *E & H Partners v. Broadway National Bank,* 39 F.Supp.2d 275, 284 (S.D.N.Y.1998). Such strict compliance standards allow the bank to act quickly, freeing it of the obligation to inquire into the underlying contracts and dealings between parties. *See Voest,* 707 F.2d at 683.

### 2. The Independence Principle

■ The independence principle dictates that the court consider only the relationship existing between the issuer and the beneficiary of the credit, independent of the commercial transaction and relationship giving rise to the credit. The issuer has no obligation to be aware of, verify, or otherwise inquire into or concern itself with any aspect of the underlying relationship. *See 3Com,* 171 F.3d at 741; *accord Mutual Export Corp. v. Westpac Banking Corp.,* 983 F.2d 420, 423 (2d Cir.1993) ("In particular, letters of credit must be interpreted on their face, independent of other contracts and the underlying transaction").

In cases of error and ambiguity in a letter of credit, the Second Circuit has applied a long-established standard of construction against the issuer (bank): "[A]s between the beneficiary of a letter of credit and the issuer ... if ambiguity exists, the words are taken as strongly against the issuer as a reasonable reading will justify." *Venizelos,* 425 F.2d at 461 (*citing Lamborn v. National Park Bank of New York,* 212 A.D. 25, 208 N.Y.S. 428 (1st Dept.), *aff'd,* 240 N.Y. 520, 148 N.E. 664 (1925)); *accord Bank of China v. Chan,* 937 F.2d 780, 786 (2d Cir.1991). *But cf. Bouzo v. Citibank, N.A.,* 96 F.3d 51, 57 (2d Cir.1996) (holding that ambiguous construction sounded against the beneficiary and not the issuer where the beneficiary had drafted the instrument in its entirety; further, the instrument was found not to be a letter of credit but a "bank pay order").

### 3. Supplementation with Contract Principles

■ Where the principles of strict construction and independence are not wholly sufficient, they are complemented with traditional principles of contract interpretation. These "[t]raditional contract rules apply 'only to the extent that contract principles do not interfere with the unique nature of credits.'" *Westpac,* 983 F.2d at 423 (citing John F. Dolan, The Law of Letters of Credit (2d ed.1991), ¶ 2.02 at 2–5). The principle of contract interpretation frequently applied to guide or supplement the strict compliance rule is the familiar one preferring constructions "that will sustain an instrument ... to one that will defeat it," *Venizelos,* 425 F.2d at 465.

In *Venizelos,* the court asserted that if, within the strict compliance standard, a letter of credit "is fairly capable of a construction that will make it valid and enforceable, that construction will be given" and that, as between two interpretations, an interpretation should be rejected if it renders the document "impossible" or "meaningless." *Id.* at 466.

### C. *Discussion of Alleged Discrepancies*
#### 1. *Conformity of Demand Letters with Amendment*

On November 30, 1998, the parties agreed to amend the original Standby Letter of Credit, No. S–0612, dated November 19, 1998, to reflect the assignation of liability by Maritima Petroleo to Maritima Overseas. The original, unamended Standby Letter of Credit reads, in pertinent part:

1. For account of Maritima Petroleo e Engenharia Ltda, Rio de Janeiro, Brasil, we Safra National Bank of New York hereby issue this irrevocable Standby Letter of Credit No. S0612. [ ... ]

2. [ ... ] We hereby confirm to you that the conditions agreed between ourselves and Maritima Petroleo e Engenharia Ltda, for us to make a demand under your Standby Letter of Credit No. S 0612, now have been met.

The Amendment to this letter reads:

WE HEREBY AMEND THIS STANDBY LETTER OF CREDIT AS FOLLOWS:

1 WHERE IT READS MARITIMA PETROLEO E ENGENHARIA LTDA, RIO DE JANEIRO, BRASIL, AMENDED TO READ *MARITIMA OVERSEAS INC., TORTOLA, BRITISH VIRGIN ISLANDS.* ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Compl., Exh. 2., Amendment (capitalization, emphasis, and spacing in original).

Part 2 of the original Standby Letter of Credit requires that the Demand Letter presented to Safra recite the language appearing in Part 2. Demand Letter 1 submitted by Ocean Rig to Safra reads, in pertinent part:

We hereby confirm to you that the conditions agreed between ourselves and Maritima Petroleo e Engenharia Ltda, for us to make a demand under your Standby Letter of Credit No. S 0612, now have been met.

Compl., Exh. 3, "Demand Letter 1". Demand Letter 2 reads, in pertinent part:

We hereby confirm to you that the conditions agreed between ourselves and Maritima Overseas, Inc., for us to make a demand under your Standby Letter of Credit No. S 0612, now have been met.

Compl., Exh. 4, "Demand Letter 2".

#### a. *Strict Compliance Standard Applied to the Amendment*

The language in Demand Letter 1 is identical to the language in Part 2 of the original Standby Letter of Credit. Safra asserts that Demand Letter 1 was therefore erroneous, because it did not incorporate the changes in the Amendment. Ocean Rig asserts that Demand Letter 1 was correct, because the Amendment modifies Part 1 of the Standby Letter of Credit and does not modify the Demand Letter.

Safra urges that the Amendment must be read to mean that both the full phrase "Maritima Petroleo e Engenharia Ltda, Rio de Janeiro, Brazil" (the "long phrase") in Part 1 and the shorter phrase "Maritima Petroleo e Engenharia Ltda" (the "short phrase") in Part 2 of the Standby Letter of Credit, and, therefore, in the Demand Letter reciting the language in Part 2, be replaced by "Maritima Overseas, Tortola, British Virgin Islands" (the "Amendment long phrase").

Ocean Rig urges, in contrast, that the Amendment must be read to mean that only the exact phrase specified in the Amendment, "Maritima Petroleo e Engenharia Ltda, Rio de Janeiro, Brazil" should modify Part 1 of the Standby Letter of Credit, so that the original long phrase "Maritima Petroleo e Engenharia Ltda,

Rio de Janeiro, Brazil" should be replaced by the Amendment long phrase "Maritima Overseas, Tortola, British Virgin Islands." Ocean Rig asserts that the short phrase, "Maritima Petroleo e Engenharia Ltda," in Part 2 of the original letter, should not be modified by the Amendment long phrase; that it should appear, without change, in the Demand Letter.[4]

The Amendment states that "Maritima Petroleo e Engenharia Ltda, Rio de Janeiro, Brazil" be replaced by "Maritima Overseas Inc., Tortola, British Virgin Islands." Safra's contention that the Amendment must also modify a separate phrase, "Maritima Petroleo e Engenharia Ltda," would require the Court to look outside the "face" of the document and to consider the subjective interpretations of the parties, contrary to the principles of letter of credit law. *See* UCP arts. 13 a & 14 b; *see also Gotham Originals*, 64 N.Y.2d at 294; *Barclay Knitwear v. King' swear Enterprises Ltd.*, 141 A.D.2d 241, 533 N.Y.S.2d 724, 727 (1st Dept.1988) ("The plain meaning of the language in the requirement for the [LOC] must control its interpretation").

■ The phrase "Maritima Petroleo e Engenharia Ltda, Rio de Janeiro, Brazil" appears only once in the original of No. S–0612, at Part 1, specifying the party on whose account the amount will be drawn. In Part 2 of document No. S–0612, which sets forth the language to be used in the Demand Letter and specifies the parties to the Agreement, there is a separate reference to "Maritima Petroleo e Engenharia Ltda." As the Amendment precedes its single substantive item with "1," but does not have a second item, style rules indicate that the "1" serves not to number the item but to designate the part of the document to which the Amendment refers. In addi-

tion, the Amendment states that it modifies only the Standby Letter of Credit; it does not purport to modify the Demand Letter. An alteration of the language in Part 2 from "Maritima Petroleo e Engenharia Ltda" to "Maritima Overseas Inc., Tortola, British Virgin Islands" would modify the language of the Demand Letter, as the Demand Letter recites the language of Part 2.

After the text at "1," the Amendment states that all other terms and conditions remain unchanged; this further suggests that the Amendment does not alter either Part 2 or the Demand Letter. The principle of strict compliance supports Plaintiff's reading of the Amendment and the correctness of Demand Letter 1.

b. *Application of the Independence Principle to the Amendment*

Substantive factors also support the correctness of Demand Letter 1. In S–0612, Part 1 identifies "Maritima Petroleo e Engenharia Ltda, Rio de Janeiro, Brazil" as the *account holder* on whose account the Standby Letter of Credit is to be drawn. Part 2 identifies "Maritima Petroleo e Engenharia Ltda" as the *company party to the contract* with Owners. Thus, altering the first identification indicates a change in the account on which the Standby Letter of Credit is to be drawn. This conforms with the agreement between Maritima Petroleo and Maritima Overseas, assigning liability to Maritima Overseas. Altering the second identification would indicate a change of the party to the agreement with Owners. Owners made agreements with "Maritima Petroleo e Engenharia Ltda" *and not* "Maritima Overseas"; there is no content-based reason to support a reading of the Amendment such that it replaces the identifica-

---

4. The Amendment could be read to replace: 1) original long phrase with Amendment long phrase and not modify the original short phrase (as in Demand Letter 1); or, 2) original long phrase with Amendment long phrase and original short phrase with shortened Amendment phrase (as in Demand Letter 2). Thus, either Demand Letter 1 or Demand

Letter 2 was correct. Safra asserts that if Demand Letter 1 was correct, the submission of Demand Letter 2 invalidated the transaction because Ocean Rig was entitled to "make one demand for payment"; if that is so, then Demand Letter 2 was worthless and should not implicate the honor or dishonor of Demand Letter 1.

tion of "Maritima Petroleo e Engenharia Ltda" in Part 2 with "Maritima Overseas."

This substantive argument speaks to the reasonableness of the Plaintiff's interpretation of the Amendment and not to an obligation on the Defendant's part to inquire into the underlying transaction. However, in the instant case, Safra, along with Maritima Petroleo, requested that Ocean Rig accept the Amendment changing the designation of the Account Holder in Part 1 of the Standby Letter of Credit. *See* Huseby Aff., ¶¶ 8–9; Pl.'s Not. Exh. A, Letter from Safra to Plaintiff's Norwegian Counsel (stating that Maritima Overseas has contacted Safra about the name change required on the Standby Letter of Credit and that Safra has sent the Amendment to Ocean Rig, and inquiring if Ocean Rig has received and agreed to the Amendment); Pl.'s Not., Exh. A, fax from Maritima Overseas to Ocean Rig ("We have been informed by Safra Bank that Ocean Rig, ASA, Oslo has not confirmed the reception of the L/C Amendment Nr. 1. This confirmation is the main thing for Safra Bank").

Because Safra's knowledge of the switch in account holders was one reason for the Amendment, it cannot argue that it would now be required to inquire into the relationship between the parties to the underlying transaction, thereby violating the independence principle.[5]

c. *Conclusion on the Amendment*

Based solely on the strict construction of the Amendment, I conclude that Plaintiff's Demand Letter 1 was correct under the terms of the Amendment. Furthermore, Defendant's own knowledge and actions pertaining to the Amendment undermine the reasonableness of the construction Defendant now urges.

2. *Conformity of Demand Letters with Signature Validation Clause of Standby Letter of Credit*

The second alleged discrepancy in Demand Letter 1 is the conformity of the signature validation in the Demand Letter with the requirements of the signature validation clause in the Standby Letter of Credit. This clause specified the Ocean Rig principals qualified to sign the Demand Letter, the minimum number of signatures, and the requirements for the validation of those signatures. The discrepancy alleged by Safra relates to the validation of the signatures.

Ocean Rig first drafted the disputed clause. Safra then incorporated that draft clause into the final Standby Letter of Credit. *See* Fonseca March Aff., ¶ 5. The draft clause in the Ocean Rig letter reads: "[S]uch signatures to be notarized by a Public Notary in Oslo, Norway, and legalized by way of Apostille, or by the relevant Norwegian authorities and the Embassy or Consulate of the United States of America in Oslo, Norway." Pl.'s Not., Exh. 2, Draft LOC.

The clause returned by Safra, and agreed to by the parties, was modified by Safra to read: "[S]uch signatures to be notarized by a Public Notary in Oslo, Norway, and legalized by way of Apostille, or by the relevant Norwegian authorities and *by* the Embassy or Consulate of the United States of America in Oslo, Norway." Pl.'s Not., Exh. 3., LOC No. S–0612 (emphasis added).

---

5. It appears that the Amendment to the Standby Letter of Credit may have been required due to an error by Safra. The application submitted to Safra by Maritima Overseas named Maritima Overseas as the applicant (or account party) at Part I and Maritima Petroleo as the contracting party named at Part 2 and in the Demand Letter. *See* Haukali Aff., ¶ 11. The final version issued by Safra named Maritima Petroleo at both Parts, re-quiring the Amendment. *See id.* Maritima Overseas alerted Safra to the error and the need for the amendment; Safra therefore may have had actual notice of the differences between the identifications of Maritima at Part I and Part II. *See* Pl.'s Not., Exh. 2, Application by Maritima Overseas to Safra for Letter of Credit, telefax dated January 27, 1998; Huseby Aff., ¶ 9.

The Safra version appears in the final Standby Letter of Credit. Ocean Rig asserts that the clause provides for alternative means of validation: that the signatures could be legalized either by Apostille, or by the Norwegian and U.S. consulates (a form of approval known as "consularization"). Safra urges that the clause imposes dual requirements, that the signatures must be legalized: 1) either by Apostille or by the Norwegian consulate; *and* 2) by the U.S. consulate. Demand Letter 1 submitted by Ocean Rig was legalized by Apostille only, *see* Compl., Exh. 3, Demand Letter 1; Safra rejected it as lacking the required consular legalization.

### a. *Strict Compliance Applied to the Signature Validation Clause*

For the sake of clarity, and to simplify analysis of the clause, an example sentence will be used that exactly follows the structure of the clause at issue but substitutes commonplace language. This sentence is: "I would like a house by the ocean, or by the mountains and by a lake."

Example 1–Clause as interpreted by Ocean Rig:

"I would like a house by the ocean, or by the mountains and by a lake" means that the speaker wants a house that is either: 1) by the ocean; or, in the alternative, 2) by the mountains and by a lake. The "or" sets off the first item (ocean) from the other two (mountains, lake), establishing the first item as an alternative to the second and third. The "and" conjoins the second and third items, signifying that both must be present in order to fulfill the conditions. Substituting Apostille, Norwegian consulate, and American consulate for the first, second, and third items, acceptable methods of legalization are either the first (Apostille), or, in the alternative, the second and third as conjoined by "and" (Norwegian consulate and American consulate). Given this reading, legalization by

Apostille, as on Demand Letter 1, fulfills the terms.

Example 2–Clause as interpreted by Safra:

"I would like a house by the ocean, or by the mountains and by a lake." Safra's interpretation urges that this sentence means, or may plausibly mean, that the speaker wants a house that is either: 1) by the ocean and by a lake; or 2) by the mountains and by a lake. This reading takes the "and" to conjoin the first and third items. Given this reading, Demand Letter 1, legalized only by Apostille and not also by the U.S. consulate, fails to meet the requirements of the clause. To support this meaning, however, the example sentence (or legalization clause) should properly read: "I would like a house by the ocean or by the mountains, and by a lake." [6] In order for "or" to specify the first and second items as alternatives, and the third item to be conjoined to both the first and second, the comma must appear after the second.

■ Strict construction weighs in favor of Ocean Rig and the correctness of Demand Letter 1. Nonetheless, it is true that Safra's construction would be supported were the clause punctuated differently; it has been noted that a comma is a "very small hook" on which to hang a decision. *In re Newbury Cafe, Inc.*, 841 F.2d 20, 22 (1st Cir.1988). Is this hook too small to support judgment against Safra?

■ In the case of a single-letter misspelling of a name, courts have found that the beneficiary did not comply strictly and that the issuer was within its right to dishonor the letter of credit. *See Beyene*, 762 F.2d at 7. By the same token, where the beneficiary complies precisely with the terms on the face of the letter of credit, an issuer may not dishonor the demand by suggesting that a single letter or typo-

---

**6.** The other construction possible to support this meaning is: "I would like a house by the ocean, or by the mountains, and by a lake." Either way, the comma must appear after the second item. The clearest sentence construction to signal dual requirements would be: "I would like a house by the ocean and by a lake, or by the mountains and by a lake."

graphical character was erroneously added or subtracted from the original with which the beneficiary complied. The only differences that are not accorded strict compliance are those that are meaningless (as cited above, the meaningless typographical error of "Smith" to "Smithh"). Here, the punctuation difference clearly is not meaningless, nor is there any support for the claim that the punctuation should have differed.

### b. Construction of Ambiguity Against Issuer or Drafter

██ Safra argues that the word "by" makes the clause ambiguous.[7] *See* Def.'s Memorandum of Law in Support of Defendant's Motion to Dismiss and Motion for Summary Judgment, at 21 ("Def.'s Mem."). Assuming, arguendo, that there is an ambiguity, it is well settled that ambiguities will be construed strongly against the issuer, as discussed above. *See Venizelos*, 425 F.2d at 466; *Bank of China*, 937 F.2d at 786. Here, Safra crafted the final clause on the basis of a draft submitted by Ocean Rig. Because Safra altered the clause in a way that introduced the ambiguity of which it complains, the construction of the putative ambiguity against the issuer is consistent with the general standard of construction requiring that the ambiguities be construed against the drafter.

7. It appears that the "by" in question is a drafting or typographical error, introduced by the Defendant. Initially, Mr. Fonseca, the Safra employee responsible for finalizing the Standby Letter of Credit, asserted that he made no alterations to the signature clause of the draft that he received from Ocean Rig's Norwegian counsel, stating that he "made no changes whatsoever to the paragraph setting forth the appropriate method for notarizing and legalizing the documents." Fonseca March Aff., ¶ 5. In a subsequent affidavit, he admits the "by" must inadvertently have been introduced when Safra finalized the document. *See* Fonseca April Aff. ¶ 5. Once defense counsel learned that "by" was Safra's mistaken insertion, they fell back to arguing that the original draft clause was hopelessly ambiguous as originally written. I disagree.

### c. Federal Law Requirements and the Signature Validation Clause

The last, and perhaps most important, ground for finding in favor of Ocean Rig is the regime governing the legalization of international commercial documents. Since 1966, the United States has prohibited its consulates and embassies from legalizing letters of credit where the second party belongs to a nation that will accept documents legalized by way of Apostille. *See* William C. Harvey, *The United States and the Hague Convention Abolishing the Requirement of Legalisation for Foreign Public Documents*, 11 Harv. Int'l. L.J. 476, 485 (1970). Instead, federal law requires the approval of letters of credit by Apostille. This policy is based upon a U.N. treaty to which the U.S. and Norway are signatories and that has been codified in Fed.R.Civ.P. 44.[8] These laws control the application of New York law, which the Agreement specifies governs this Standby Letter of Credit. The UCP, which also governs this Standby Letter of Credit, is silent on the precise requirements of legalization, but for the requirement that the legalizations appear on their face to conform with the requirements agreed to by the parties. *See* UCP art. 20 b.

U.S. consulates and embassies will only provide "consularization" services when the second party to the letter of credit (or other documentation) is a member of a

8. *See* Fed.R.Civ.P. 44. Acceptable methods of legalization of documents are set forth in the appendix to Rule 44. This reads, in pertinent part:

Article 3  The only formality that may be required in order to certify the authenticity of the signature . . . is the addition of the certificate described in Article 4 [the Apostille].

Article 9  Each contracting State shall take the necessary steps to prevent the performance of legalizations by its diplomatic or consular agents in cases where the present Convention provides for exemption.

country that is not a signatory to the Convention and therefore will not accept legalization by means of Apostille. *See* Fed.R.Civ.P. 44. In short, Ocean Rig would not have been able to legalize Demand Letter 1 or 2 through consularization, as the U.S. and Norway are both Convention signatories. If the signature validation clause is interpreted to mean that consularization is required, it would render the clause, and the entire contract, incapable of performance. The Second Circuit has affirmed that where a party's interpretation would prevent another party from submitting any documentation that conformed to the requirements of the letter of credit, such a result "cannot be tolerated for it would render meaningless the parties' agreement to ... the letter of credit." *Banque Worms*, 679 F.Supp. at 1178, *aff'd*, 849 F.2d 787 (2d Cir.1988). Here, Safra's interpretation would "render meaningless the parties' agreement to ... the letter of credit," as consularization is not available to members of countries signatory to the Convention; thus, it "cannot be tolerated."

#### d. *Independence Principle Not Breached by Requiring Compliance with Federal Law*

Safra argues that under the independence principle it is not required to "be familiar with or to consider the customs of, or special meaning or the effect given to particular terms, in the trade" of the parties to the underlying contracts. *Marino*, 686 F.2d at 115. The requirements of Rule 44 and the Convention are not, however, customs of the trade. The legalization of signatures on a letter of credit does not touch on any custom or peculiarity of dealings in offshore oil drilling rigs, the business of Ocean Rig or Maritima Petroleo, but on the issuance of letters of credit, the business of Safra. Thus while it would be sufficient to find for Ocean Rig based solely on the signature validation clause, the finding is supported as well by the general principles of contract construction.

### V. *Conclusion*

For the forgoing reasons, Defendant's motions to dismiss and for summary judgment are denied. Summary judgment is granted to the Plaintiff on its third and fourth causes of action. Plaintiff's sixth cause of action, seeking punitive damages and attorneys' fees, is denied. Because this disposes of all the issues in the case, the Clerk is directed to prepare a judgment including court costs and interest running from the date of dishonor. The Clerk is further directed to close this case upon the entry of judgment.