NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, and The Insurance Company of the State of Pennsylvania, Plaintiffs,

v.

STANDARD FEDERAL BANK, N.A., Defendant.

No. CIV. 02–40260.

United States District Court, E.D. Michigan, Southern Division.

March 18, 2004.

Amy A. Baranski, Lynch, Prokopp, Southfield, MI, Edward C. Cutlip, Jr., Kerr, Russell, (Detroit), Detroit, MI, for Plaintiffs.

Rasul M. Abdul–Raheem, Standard Federal Bank, Thomas J. Guyer, Standard Federal Bank, Troy, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

This case involves the interpretation of a standby letter of credit. Plaintiffs claim that Defendant wrongfully refused Plaintiffs' request for payment on a standby letter of credit. Defendant claims that payment was properly denied because Plaintiffs' request for payment did not conform with the terms of the letter of credit. Both parties have filed motions for summary judgment. For the reasons stated below, the Court will grant Defendant's motion and deny Plaintiffs' motion.

## I. BACKGROUND

■ The parties do not dispute the facts in this case. Rather, the parties disagree about the proper interpretation of a standby letter of credit. A standby letter of credit "is used in a nonsales transaction as a guarantee against default on contractual obligations." *Demczyk v. Mutual Life Ins. Co.*, 126 F.3d 823 (6th Cir.1997) (citations omitted). A letter of credit transaction typically involves three relationships: (1) an underlying commercial transaction or contractual agreement between two parties, (2) a bank's agreement with its customer, who is one of the parties to the underlying transaction, to issue a letter of credit supporting the customer's obligations in the underlying transaction, and (3) the bank's resulting obligation to the other party in the underlying transaction, the "beneficiary," to honor drafts on the letter of credit that conform to the terms of the letter. *3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 741 (2d Cir.1999) (citations omitted). This case involves a dispute between Plaintiffs, the beneficiaries of the letter of credit, and Defendant, the bank that issued the letter of credit.

In this case, Defendant Standard Federal Bank, formerly known as Michigan National Bank, issued a standby letter of credit on or about June 15, 2001. This letter was on behalf of Affinity Business Systems ("Affinity"), a corporation that is not a party to this action. The beneficiaries of this letter of credit were National Union Fire Insurance and the Insurance Company of the State of Pennsylvania ("Plaintiffs"). The letter of credit established an obligation for Defendant bank to pay Plaintiffs certain sums on certain dates, if the conditions of the letter were met. Specifically, the letter of credit provided that Defendant bank would honor a sight draft "for all or any part of [the following] credit" if timely presented at the proper location:

| Effective | Amount | Total Available |
| --- | --- | --- |
| June 15, 2001 | $500,000.00 | $ 500,000.00 |
| July 15, 2001 | $500,000.00 | $1,000,000.00 |
| August 1, 2001 | $500,000.00 | $1,500,000.00 |

Pl's Ex. A; Def's Ex. A. Affinity was to provide Defendant bank with the funds prior to the effective date for each increase: "[e]ach successive increase will be available upon receipt by" Defendant bank of "an equal amount" of funds "prior to the applicable date." *Id.* The letter of credit further provided that if the bank "is not in receipt of the second or third installment of such funds by such dates, this Letter of Credit will be limited to the amount on deposit in said account." *Id.* Affinity never made the second or third installment payment on the account. The letter of credit was not renewed by the bank and therefore expired on the close of business on June 15, 2002.

On Friday, June 14, 2002, Defendant Bank received a sight draft from Plaintiffs demanding payment of $1,500,000.00. On June 19, 2002, Defendant bank gave Plaintiffs notice that it dishonored the sight draft. Defendant bank based its dishonor on a discrepancy between the amount of the sight draft and the amount available under the letter of credit: the demand exceeded the amount available. On June 14, 2002, the amount available in the relevant account at Defendant bank was zero. The account did, however, contain a standby letter of credit for $500,000.00 with another bank, which was also due to expire on June 15, 2002.

Plaintiffs bring this suit claiming that Defendant wrongfully dishonored the sight draft. Plaintiffs agree that the sight draft could not have been honored for the full $1,500,000.00. Plaintiffs instead claim that their $1,500,000.00 draft should have been treated as a draft for $500,000.00, the value in the account, and honored. Defendant claims that the sight draft was properly denied because it exceeded the value in the account by $1,000,000.00 and therefore did not strictly conform to the terms of the letter of credit.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts

and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548;

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

**III. ANALYSIS**

At the outset, the Court notes that the letter of credit at issue provides for a choice of law. Specifically, the letter of credit states that it "is subject to and governed by the laws of the State of New York, and the 1993 revision of the Uniform Customs and Practice Documentary Credits for International Chamber of Commerce (Publication 500) and, in the event of any conflict, the laws of the State of New York will control." Pl's Ex. A; Def's Ex. A. Both parties agree with this choice of law and have provided the Court with appropriate authority for their arguments. Accordingly, the Court will apply this choice of law in its analysis.

 With this choice of law, the Court must determine whether Defendant bank's dishonoring of Plaintiffs' sight draft was a proper interpretation of the letter of credit. "Whether documents conform to the letter of credit is for the court to decide, and when the documents patently fail to do so, summary judgment is appropriate." *Brenntag Int'l Chem., Inc. v. Nord-*

*deutsche Landesbank GZ*, 70 F.Supp.2d 399, 406 (S.D.N.Y.1999). "In determining whether to pay, the bank looks solely at the letter and the documentation the beneficiary presents, to determine whether the documentation meets the requirements in the letter." *Marino Indus. Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir.1982). Accordingly, to determine whether the sight draft was properly dishonored, the Court will look to the letter of credit and the documentation.

Under New York law, "two central tenets govern[ ] the construction of letters of credit": the principle of strict compliance and the principle of independence. *Ocean Rig ASA v. Safra National Bank of N.Y.*, 72 F.Supp.2d 193, 198–99 (S.D.N.Y.1999) (citing *3Com Corp.*, 171 F.3d at 741; Int'l Chamber of Commerce, Publ'n 500, Uniform Customs and Practice for Documentary Credits arts. 3a, 13a, and 14b). The principle of strict compliance requires "that the conditions of the letter of credit must be complied with precisely by all parties; documents that are 'nearly the same' will not suffice." *Id.* (citations omitted). "Such strict compliance standards allow the bank to act quickly, freeing it of the obligation to inquire into the underlying contracts and dealings between parties." *Id.* (citation omitted). The principle of independence "dictates that the court consider only the relationship existing between the issuer and the beneficiary of the credit, independent of the commercial transaction and relationship giving rise to the credit." *Id.* Finally, the Court notes that if there is any ambiguity or error in the letter of credit, there is "a long-established standard of construction against the issuer (bank)." *Id.* (citations omitted).

The question in this case is whether Plaintiffs' draft of $1,500,000.00 was in strict compliance with the letter of credit. Plaintiffs note that the letter of credit states that the "[t]otal [a]vailable" after "August 1, 2001" is "1,500,000.00." Plaintiffs argue that since their draft was submitted after August 1, 2001, the face value of the letter of credit was $1,500,000.00. Therefore, they argue, their draft strictly complied with the letter of credit and should be honored.

This argument fails because it views portions of the letter of credit in isolation. Plaintiffs' argument overlooks other statements in the letter of credit. The letter of credit states that *if* the bank "is not in receipt of the second or third installment of such funds by such dates, this Letter of Credit *will be limited to the amount on deposit in said account.*" Pl's Ex. A; Def's Ex. A (emphasis added). This sentence clearly articulates a condition that would limit the letter of credit to the amount on deposit. The language is specific and is located in the paragraph immediately following the listing of the amounts available under the letter of credit. Defendant has presented testimony from Plaintiffs' own witnesses admitting that the plain language of this sentence limits the amount available to Plaintiffs. *See* Def's Resp. Br. Ex. B, G, & H.

It is undisputed that the second and third installment payments were never made. Consequently, the condition in the letter of credit was met: since the bank did not receive the funds, the letter of credit was limited to the amount on deposit. On June 14, 2002, the date Plaintiffs submitted their draft, the amount on deposit in the relevant account was less than $1,500,000.00. Thus, the draft requested more money than was available under the letter of credit.

The discrepancy between the amount requested in the draft and the amount available in the account makes the draft nonconforming. New York courts have held that drafts that exceed the face value of the letter of credit do not strictly comply

with the letter of credit. *Hellenic Republic v. Standard Chartered Bank*, 219 A.D.2d 498, 631 N.Y.S.2d 320, 321 (N.Y.App.Div.1995) ("The documents submitted by plaintiff [ ] did not strictly comply with the requirements of the standby letter of credit because the total amount drawn was in excess of the face amount thereof."). The face value of the letter of credit in this case is affected by the provision that if the bank "is not in receipt of the second or third installment of such funds by such dates, this Letter of Credit *will be limited to the amount on deposit in said account.*" Pl's Ex. A; Def's Ex. A (emphasis added). Although the face value of the letter of credit was limited by this condition, Plaintiffs submitted a draft for the amount that would have been available if the second and third payments had been made. Since those payments were not made, the draft exceeded the amount available under the letter of credit. Accordingly, Plaintiffs' draft did not conform to the amount available under the letter of credit.

■ Plaintiffs point to other language in the letter of credit that suggests Defendant bank had an obligation to pay this draft. Plaintiffs first note that the letter states that "[t]he obligation of Michigan National, and [sic] is in no way contingent upon reimbursement with respect thereto." *Id.* Plaintiffs' argument ignores the fact that this sentence does not alter "the obligation" that Defendant bank has to pay; that obligation is *limited to the amount on deposit in said account*" by the explicit terms of the letter. The limitation on the obligation is not ambiguous. Consequently, there is no need for the Court to construe any ambiguity against the issuing bank or in favor of Plaintiffs, the beneficiaries.

■ Plaintiffs further argue that Defendant bank was obliged to pay $500,000.00 on this $1,500,000.00 draft be-cause the letter of credit promised to honor drafts "for all or any part of this credit." Plaintiffs appear to suggest that this clause means that Defendant bank should honor a draft for the full amount for any lesser sum available. The plain language suggests a different interpretation: that Plaintiffs could submit a draft for "all or any part of this credit," and such a draft would be honored in accordance with Defendant bank's obligations. Plaintiffs were not required to request the full amount of the letter of credit, but could request "any part" of the credit available under the letter. The Court considers this sentence to refer to Plaintiffs' rights to request a part of the total amount available, not to Defendant bank's obligation to pay part of a draft that requests more money than is available in the account.

In conclusion, the Court determines that the draft was properly dishonored because of a discrepancy in the amount demanded. The amount demanded did not strictly conform with the letter of credit. Plaintiffs presented a draft to Defendant bank for $1,500,000.00. The letter of credit stated that if the bank "is not in receipt of the second or third installment of such funds by such dates, this Letter of Credit will be limited to the amount on deposit in said account." Neither the second nor third installment payments were made. Consequently, the letter of credit was limited to the amount on deposit. The amount on deposit was either zero or $500,000.00, depending on whether a standby letter of credit with another bank is considered to be "on deposit" in the relevant account. Regardless, the request for $1,500,000.00 did not conform to an amount available under the terms of the letter of credit. Accordingly, Defendant bank properly dishonored the letter of credit. The Court will therefore grant Defendant's motion for summary judgment and deny Plaintiffs' motion for summary judgment.

Finally, the Court commends both parties for their clear and thoughtful briefing of this matter.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED,** that the Defendant's motion for summary judgment [docket entry 23] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Plaintiffs' motion for summary judgment [docket entry 24] is **DENIED.**

**SO ORDERED.**

### *JUDGMENT*

This action having come before this Court, the Honorable Paul V. Gadola presiding, the issues having been fully presented, the Court being fully advised in the premises, and a ruling having been duly rendered, **IT IS ORDERED AND ADJUDGED** that Plaintiffs National Union Fire Insurance and the Insurance Company of the State of Pennsylvania **TAKE NOTHING** from Defendant Standard Federal Bank, that Defendant Standard Federal Bank recover of Plaintiffs National Union Fire Insurance and the Insurance Company of the State of Pennsylvania its costs of action, and that the action against Defendant be **DISMISSED** on the merits.